Anthony Leo GENIA, Jr.,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant,

and

Bobbie Jo RITTER, Petitioner,
Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

Nos. CX–85–1336, C5–85–1485.

Court of Appeals of Minnesota.

Feb. 25, 1986.

William R. Kennedy, Hennepin Co. Public Defender, Philip D. Bush, Asst. Public Defender, Jeffery Wagner, Law Clerk, Minneapolis, for respondents.

Hubert H. Humphrey, III, Atty. Gen., M. Jacqueline Regis, Joel A. Watne, Sp. Asst. Attys. Gen., St. Paul, for appellant.

Heard, considered and decided by LANSING, P.J., and HUSPENI and LESLIE, JJ.

## OPINION

LANSING, Judge.

This appeal consolidates two implied consent cases. In each case the petitioner agreed to take an Intoxilyzer breath test, but the officer operating the machine discontinued the test before the machine completed the first four-minute cycle because the officer determined the subject was not cooperating. The Commissioner revoked both drivers' licenses for refusal to submit to testing, and the trial court in each case rescinded the revocation. The Commissioner appeals, and we affirm.

## FACTS

### Anthony Genia

On January 20, 1985, at about 1:30 a.m., Minneapolis Police Officer Steven Sizer stopped Anthony Genia's automobile after observing him roll through a stop sign. Genia explained that he was taking an injured passenger to the hospital. Officer Sizer observed indicia of intoxication and gave Genia a portable breath test, which Genia failed. Sizer arrested him for driving under the influence of alcohol and arranged for an ambulance to transport the passenger to the hospital.

At the police station Genia agreed to take a breath test. Sizer, a certified Intoxilyzer operator, administered it. Sizer started the test but terminated it before the end of the four-minute cycle for the first breath sample when he concluded that Genia was not blowing into the mouthpiece. Because of this premature termination, the Intoxilyzer did not indicate whether Genia's breath sample was adequate or deficient, and no calibration standard was performed to confirm the proper working of the Intoxilyzer.

At the implied consent hearing Genia testified that he was blowing into the Intoxilyzer as hard as he could, but that he had a cold and was congested. Robert Mooney, a Minnesota Bureau of Criminal Apprehension laboratory chemist, testified that there is a four-minute period during which the sample can be blown and that the recom-

mended procedure is to allow the Intoxilyzer to run its full four-minute cycle so that the machine's proper functioning can be proved by the calibration standard.

The trial court concluded that the Commissioner did not show that Genia refused testing, because Officer Sizer terminated the test before the end of the first four-minute cycle. The trial court specifically found that Genia's failure to provide an adequate sample was not caused by physical inability. The trial court reinstated Genia's driving privileges.

### Bobbie Jo Ritter

On March 2, 1985, Minneapolis Police Officer Craig Nordby stopped Bobbie Jo Ritter's vehicle and observed indicia of Ritter's intoxication. She was crying and emotionally distraught. She agreed to take a portable breath test, but it did not register a reading. Officer Nordby arrested Ritter for driving under the influence of alcohol, and she agreed to take a breath test. Ritter stipulated that the stop was proper and that the officer had probable cause to arrest her.

A mobile testing van was sent to the scene. Officer Lawrence Mangan, a certified Intoxilyzer operator, attempted to administer a breath test to Ritter. Mangan discontinued the breath test two to three minutes into the first four-minute cycle without obtaining an adequate breath sample. He considered it a refusal because he said Ritter was not blowing into the Intoxilyzer hard enough and was not forming a tight seal around the mouthpiece. Consequently, the Intoxilyzer did not indicate whether the breath samples obtained were adequate or deficient.

Ritter testified that earlier in the evening she had been in a fight, and when her car was stopped, her eyes and jaw were swollen. She said she tried to provide an adequate sample but had trouble forming a seal around the mouthpiece because her jaw hurt. The trial court concluded that the Commissioner did not show that Ritter refused the breath test, because the officer

terminated the test before the first four-minute cycle ended. The court reinstated Ritter's driving privileges.

## ISSUE

Does a driver refuse an Intoxilyzer breath test when the operator deems the driver uncooperative and terminates the test before the machine completes the first four-minute breath cycle?

## ANALYSIS

■ The Commissioner has approved the use of the Intoxilyzer 5000 to determine alcohol concentration in a breath sample. *See* Minn.Stat. § 169.01, subd. 68 (1984); Minn.R. 7502.0420, subpt. 2 (1985). Testimony at the hearings established that the Intoxilyzer is programmed to allow four minutes for the driver to provide the first breath sample. It performs a calibration standard, then allows another four minutes in which to provide a second breath sample. Robert Mooney testified that the BCA decided on the four-minute period because it allows drivers enough time to attempt an adequate sample but is not so long as to be unreasonable.

The legislature enacted specific provisions to govern Intoxilyzer breath tests. A test and a refusal are defined as follows:

(a) In the case of a breath test administered using an infrared breath-testing instrument, the test shall consist of analyses in the following sequence: one adequate breath sample analysis, one calibration standard analysis, and a second, adequate breath sample analysis.

(b) In the case of a test administered using an infrared breath-testing instrument, *a sample is adequate if the instrument analyzes the sample and does not indicate the sample is deficient.*

(c) For purposes of this section when a test is administered using an infrared breath-testing instrument, failure of a person to provide two separate, adequate breath samples in the proper sequence constitutes a refusal.

Minn.Stat. § 169.123, subd. 2b (1984) (emphasis added). The Commissioner also pro-

vided by rule that failure to provide "two separate, adequate breath samples constitutes a refusal, unless the failure is the result of physical inability * * *." *See* Minn.R. 7502.0430, subpt. 1 (1985).

It is clear that a person's behavior before commencing the Intoxilyzer test can constitute refusal to take a test. *See Sigfrinius v. Commissioner of Public Safety,* 378 N.W.2d 124 (Minn.Ct.App.1985). The issue here is whether, when a person agrees to take the Intoxilyzer test, and the first four-minute cycle begins, an officer may discontinue the test before the adequacy of the sample is determined and find a refusal based on the driver's failure to cooperate.

The Commissioner argues that the officer is under no obligation to continue testing to obtain a deficient sample record if the driver is not cooperating. In the Commissioner's view, the full four-minute period should be available only to those who, in the officer's opinion, are genuinely trying to provide a sample.

Minn.Stat. § 169.123, subd. 2b, makes it clear that the Intoxilyzer, not the police officer, is to determine the adequacy of a breath sample. A refusal is defined as failure to provide two adequate breath samples. The purpose of requiring that the test be continued until the four-minute period is completed is not solely to obtain a test record, as the Commissioner argues, but to allow the Intoxilyzer to determine the adequacy of the sample. If the sample is deficient, the driver is deemed to have refused the test unless there is a finding of physical inability.

■ In this straightforward statutory scheme, the Commissioner attempts to inject a completely subjective element: once testing has begun, a refusal can be based on an officer's conclusion that a driver is not making a good-faith effort to provide an adequate sample. We find no authority in the statute for this position. Once testing has begun, the driver is entitled to have the full four minutes so the machine can determine the adequacy of the sample. With a record of the proper functioning of

the Intoxilyzer, the Commissioner can readily meet the burden of proving a refusal. Our holding eliminates the need to examine the factual basis for the officer's conclusion that the driver constructively refused the test.

## DECISION

The trial courts correctly found that respondents did not refuse breath testing when the Intoxilyzer operators discontinued the tests, based on the operators' belief that respondents were not cooperating, before completing the four-minute cycle.

Affirmed.