**Kirk Paul JOHNSON,**
**Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC**
**SAFETY, Appellant.**

**No. C9–86–1435.**

Court of Appeals of Minnesota.

Feb. 3, 1987.

Review Denied April 17, 1987.

James L. Erickson, Hyatt Legal Services, Brooklyn Center, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Spec. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered, and decided by RANDALL, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

RANDALL, Judge.

Respondent was arrested for driving while under the influence. His driver's license was revoked for refusing chemical testing under the implied consent law, and he petitioned for judicial review. The trial court rescinded the revocation. The Commissioner of Public Safety appeals. We affirm.

## FACTS

On May 4, 1986, at approximately 1:00 a.m., Officer Rayette Manderfelt of the Corcoran Police Department placed respondent Kirk Paul Johnson under arrest for driving while under the influence. She read the implied consent advisory to respondent, who stated he understood it and agreed to take the breath test. Manderfelt transported respondent to the Medina Police Station, where the Intoxilyzer test was to be performed. Manderfelt initialed the Intoxilyzer test record form indicating she had observed respondent for fifteen to twenty minutes prior to administering the test.

At approximately 2:36 a.m., Officer Jill Hodapp of the Medina Police Department, a certified peace officer and Intoxilyzer operator, attempted to administer a breath test to respondent by pressing the start test button on the Intoxilyzer and inserting a test record. The Intoxilyzer first performed internal diagnostic checks. The temperature of the Intoxilyzer and the air blanks produced readings within established tolerances, indicating the machine was working properly. Respondent blew into the machine several times, but never blew long enough or hard enough to produce an adequate sample.

At some point during this period while Hodapp was attempting to get an adequate sample, she indicated to respondent that if he could not provide an adequate sample she would note it as a refusal and there could be driver's license consequences. At this time, two and one-half minutes of the standard four minutes for providing a breath sample had elapsed. Respondent indicated that he was willing to continue trying to provide an adequate breath sample, but as he opened his mouth to again receive the tube, he stuck his tongue out at Officer Hodapp.

Respondent had been uncooperative and belligerent off and on since his initial arrest. When he stuck his tongue out at the testing officer, it was to her the last straw. She terminated the testing process, and noted a refusal for respondent. He was not allowed to continue to breathe into the Intoxilyzer for another minute and one-half, but Hodapp did allow the machine to keep running for the four minute cycle. After the four minutes were up, the machine reported that the breath sample submitted by respondent was deficient. This test record was admitted into evidence.

At the implied consent hearing, respondent testified that he made only one attempt to provide a sample for just a few seconds, and that he felt the officer deliberately terminated his testing to cause him to lose his license for one year. Respondent agreed that he had been belligerent and uncooperative, but testified that it was due to his being handcuffed behind his back immediately upon his arrest, a position unnecessarily restrictive and painful.

Respondent also indicated that, although he smokes cigarettes and gets winded easily, he does physical labor and was not suffering from any illness or injury which would render him physically unable to blow into the Intoxilyzer.

The trial court found respondent had been read the implied consent advisory and had agreed to take the breath test. The

trial court found the Intoxilyzer machine worked properly, but that no adequate sample had been provided by petitioner during the two and one-half minutes he was allowed to blow into the machine.

The trial court concluded petitioner had not refused to give a test within the meaning of the law, and thus the revocation was improper and petitioner was entitled to an order rescinding the revocation of his driving privileges. Appellant Commissioner of Public Safety appeals. We affirm.

## ISSUES

1. Was the issue of refusal properly before the trial court?

2. Did the trial court properly rescind the revocation of respondent's driving privileges where the officer prevented respondent from completing the test because she determined respondent's belligerence constituted a refusal?

## ANALYSIS

### I.

*Scope of Review*

■ The parties stipulated that respondent refused the test, and the only issue was whether the refusal was reasonable. The stipulation on the record was narrow, but it is clear that probable cause was not at issue. In response to the court's question "The only issue is of a reasonable refusal?" respondent's attorney answered "yes."

At oral argument respondent's attorney argued vigorously that he was misled by appellant's attorney. When attempting to cooperate prior to the hearing to narrow the issues, respondent's attorney did not mean to give up what he felt was his client's basic right to argue that respondent had not refused the test, but rather he had not been allowed a full four minutes to blow into the Intoxilyzer machine.

Appellant, on the other hand, argues that the trial court erroneously considered whether respondent refused, and should only have considered whether his refusal was reasonable. We note that the two issues are close, and, in the way the case was presented and argued by both sides, the issues overlap. Thus we find that the issue of whether there was a refusal at all was properly before the trial court.

### II.

*Rescission*

The critical issue for both sides, the trial court, and now this court on review, is whether the trial court properly rescinded respondent's revocation. After making its findings of fact, the trial court rescinded respondent's revocation, holding:

Once an Intoxilyzer Test has been commenced, the Operator may not terminate the testing and consider it a refusal prior to the expiration of the first four minute cycle and calibration standard analysis. *Huber v. Commissioner of Public Safety*, 382 N.W.2d 573 (Minn.Ct.App.1986); *Genia v. Commissioner of Public Safety*, 382 N.W.2d 284 (Minn.Ct.App.1986).

The Commissioner argues that the trial court's factual finding #10, indicating that the Intoxilyzer machine was terminated prior to the conclusion of the four minute test period, is unsupported by the record, and should be reversed. The Commissioner argues that when the police officer took the breath tube away from respondent, the Intoxilyzer was allowed to continue the full four minute cycle, and thus the trial court erred in finding that the Intoxilyzer test was "terminated."

■ The Commissioner's argument is not well taken. The Commissioner does not dispute the fact that respondent was not allowed the full four minutes to blow into the machine, and that the machine can only record an adequate sample, if ever, if people blow into it. Thus, allowing it to run for four minutes with no one blowing into it is tantamount to terminating testing.

■ Whether the test was "terminated," or respondent's ability to participate in it was cut off, is just a matter of semantics.

The net result is exactly the same. Respondent was denied access to the Intoxilyzer for the four minutes he needed to register a quantifiable sample. By not being allowed to finish, we cannot tell if respondent would have failed or passed the test. The crucial question is whether Officer Hodapp's refusal to allow respondent to participate for the full four minutes of the testing was justifiable, and thus whether respondent's revocation should stand. The trial court found that the revocation could not stand, and we agree.

In *Genia*, this court addressed the question of whether, when a driver agrees to take the Intoxilyzer test and the first four minute cycle begins, an officer may discontinue the test before the adequacy of the sample is determined by the machine, and find a refusal based on the driver's failure to cooperate. *Id.*, 382 N.W.2d at 286. We held that:

> Once testing has begun, the driver is entitled to have the full four minutes so that the machine can determine the adequacy of the sample.

*Id.* at 287. In *Huber*, the officer terminated the test prior to completion of the four minute period because he felt the driver had no intention of giving a good test. *Huber*, 382 N.W.2d at 574. We again held that the driver is entitled to the full four minutes of the cycle, so that the Intoxilyzer, not the police officer, determines the adequacy of the breath sample. *Id.* at 575.

In *Overby v. Commissioner of Public Safety*, 386 N.W.2d 1 (Minn.Ct.App.1986), this court affirmed the rescission of a driver's license revocation where evidence supported the finding that the driver was not given the full four minutes in which to provide a breath sample, although the Intoxilyzer showed a deficient sample had been given. *Id.* at 1. Where respondent here was not given the full four minutes, the fact that the machine ran out its four minutes and then showed a deficient sample does not distinguish this case from *Huber* or *Genia* as the Commissioner argues.

The Commissioner argues that somehow it is contrary to public policy to allow DWI suspects to be verbally abusive and belligerent, and thus the officer's not giving the breath tube back to respondent for the minute and one-half to complete the cycle was reasonable. The Commissioner further argues that somehow a belligerent driver is not entitled to quite the same rights of a testing process as a non-belligerent one is.

The Commissioner's argument misses the point. Even though controlled by the rules of civil, not criminal procedure, implied consent in Minnesota is a legal process with severe sanctions for drivers. Thus, statute and case law have set up certain procedures which must be followed to balance both the peace officer's right to investigate and apprehend intoxicated drivers and the citizen's right to be free from state imposed penalties and sanctions, unless those penalties and sanctions are properly applied. A state wishing to impose sanctions and penalties must recognize every citizen's due process right to defend oneself.

It is conceded that respondent was verbally abusive and belligerent, and such rudeness is not to be appreciated. However, the record is clear that respondent's rudeness started when he was arrested, yet throughout the arrest and booking procedures and the start of the test, the officers were able to handle respondent and get him to the station house to take the test. Loud talking persons in some degree of intoxication are a routine part of police work, and officers are expected to deal with that. The record is clear that during the four-minute period in which respondent was to breathe into the machine, respondent did not state that he would not breathe into the machine. To the contrary, after being told his previous attempts were unsuccessful, respondent stated that he would try again to give an adequate sample. As he opened his mouth to receive the tube for the final one and one-half minutes, he stuck out his tongue at the testing officer. She took

that as a refusal and did not insert the tube in respondent's mouth, and did not allow him to complete testing.

We are not dealing with a situation where respondent clenched his teeth and refused to allow the insertion of the tube, or was continually spitting it out or doing any other act which would make it physically impossible to get his breath sample for four minutes. To the contrary, he was, in fact, blowing into the machine and indicating an intention to keep blowing into it when the tube was taken away from him. The elementary act of rudeness of sticking out one's tongue does not change the law.

Under *Genia* and *Huber*, we held that the Intoxilyzer machine, not the officer, is to determine whether the sample is deficient, to get away from relying on the officer's subjective opinion that a driver constructively refused the test. Officer Hodapp's conclusion that respondent's sticking out his tongue was a refusal to take the test was completely subjective. Respondent's rudeness was in bad taste, but bad taste does not make bad law. For example, an unruly or abusive defendant in custody is still entitled to a *Miranda* warning before being interrogated. A belligerent and obnoxious defendant is entitled to a court-appointed attorney if he cannot afford his own.

Rules of law and rights of citizens are not dependent on proper etiquette. If they were, the danger is that the power of law would reside in the person who decides what is proper etiquette.

We find that this case is controlled by *Genia, Huber,* and *Overby,* and that the trial court did not err in rescinding the revocation of respondent's driving privileges.

## DECISION

The trial court's order rescinding the revocation of respondent's driving privileges is affirmed.

Affirmed.