Patrick T. O'BRIAN, Petitioner,
Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C7–96–513.

Court of Appeals of Minnesota.

Aug. 13, 1996.

Faison T. Sessoms, Minneapolis, for Appellant.

Hubert H. Humphrey III, Attorney General, Joel A. Watne, Assistant Attorney General, St. Paul, for Respondent.

Considered and decided by KLAPHAKE, P.J., and KALITOWSKI and DAVIES, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant Patrick T. O'Brian challenges the revocation of his driver's license, arguing he reasonably refused to provide the second sample for the Intoxilyzer 5000 breath test because the officer refused to tell O'Brian the results of the first sample.

## FACTS

In the early morning hours of December 6, 1995, an officer with the Brooklyn Park Police Department arrested O'Brian for driving under the influence of alcohol. The officer read O'Brian the implied consent advisory several times and O'Brian agreed to submit to testing.

The officer transported O'Brian to the police department to administer the Intoxilyzer test. The officer is a certified Intoxilyzer 5000 operator. While escorting O'Brian into the test room, the officer explained that a completed Intoxilyzer test consists of two separate samples. O'Brian stated he understood this. The officer requested O'Brian to blow into the Intoxilyzer to give the first sample. He did. Thereafter, the officer told O'Brian to have a seat while he calibrated the instrument for the second test.

O'Brian asked for the result of the first test. The officer replied that the complete Intoxilyzer test consists of two separate samples, and that he would give O'Brian the complete test result after O'Brian gave the second sample. The officer told O'Brian he had only four minutes to give the second sample and refusal to give a second sample would be deemed a refusal to submit to testing. O'Brian became very angry and after putting his mouth on the mouthpiece for one to two seconds, he stopped and yelled at the officer, called the officer a jerk and then refused to give a second sample. Shortly thereafter, the time lapsed on the Intoxilyzer and the final reading was a deficient second sample. The reading of O'Brian's first sample showed O'Brian's alcohol concentration to be .15.

The district court concluded O'Brian unreasonably refused to submit to testing and that the officer did not detract from O'Brian's time or ability to blow the second sample. O'Brian filed a notice of appeal to this court.

## ISSUE

Did O'Brian reasonably refuse to submit to the required implied consent testing?

## ANALYSIS

Findings of the district court will not be reversed unless clearly erroneous. Minn. R.Civ.P. 52.01. Conclusions of law, however, can be overturned if the trial court erroneously construed and applied the law to the facts. *Dehn v. Commissioner of Pub. Safety,* 394 N.W.2d 272, 273 (Minn.App.1986).

When a person arrested for driving under the influence of alcohol submits to an Intoxilyzer 5000 test, the driver is required to produce two separate, adequate breath samples. Minn.R. 7502.0430, subpt. 1 (1995); *Cole v. Commissioner of Pub. Safety,* 535 N.W.2d 816, 818 (Minn.App.1995). Failure to produce two separate, adequate breath samples within the allotted time constitutes a refusal, unless the failure is the result of physical inability to provide a sample. Minn. Stat. § 169.123, subd. 2b(c) (1994); *Id.* The officer must give the driver a four-minute period for each sample to allow a reasonable amount of time for drivers to produce an adequate sample. *Cole,* 535 N.W.2d at 818. Once the Intoxilyzer test begins, the officer may not terminate the test before the machine signals the expiration of each four-minute period. *Johnson v. Commissioner of Pub. Safety,* 400 N.W.2d 195, 198–99 (Minn. App.1987), *review denied* (Minn. Apr. 17, 1987). The primary thrust of the law on this issue is to protect drivers from an officer's deliberate attempt to terminate the testing procedure before the expiration of the four-minute period. *Cole,* 535 N.W.2d at 818. The officer need not hold the machine to the driver's mouth for the full four minutes; rather, the four-minute period gives a person a reasonable amount of time to provide an adequate sample and includes time for interruptions for further instructions, listening to arguments, answering questions and changing mouthpieces. *Id.*

■ Initially, the Commissioner argues the reasonableness of O'Brian's refusal is an issue not properly before this court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (this court can only consider matters presented to and considered by the district court). Although O'Brian's attorney stated on the record that the only issue in this case is whether or not there was a refusal to submit to testing, O'Brian's attorney clearly offered testimony concerning the reasonableness of the refusal at trial and commented on the reasonableness issue in closing argument. This court has noted that the issue of whether a test was completed and whether refusal to complete a test was reasonable are "close" issues. *Johnson*, 400 N.W.2d at 197. Because the reasonableness of O'Brian's refusal was litigated and addressed by the district court, we conclude the issue is properly before us.

■ A driver may assert the affirmative defense that the driver's refusal to submit to a breath test was reasonable under the circumstances. Minn.Stat. § 169.123, subd. 6. O'Brian argues his refusal to give a second adequate breath sample was reasonable because the officer would not tell him the results of the first test sample. O'Brian relies on *Cole* which stated the four-minute period includes time for interruptions and answering questions. *See* 535 N.W.2d at 818. Contrary to O'Brian's contention, however, *Cole* does not require officers to answer all questions asked by drivers, but simply states that four minutes is long enough to give a breath sample considering other distractions likely to occur at the same time. *Id.* We conclude the law does not require an officer administering an Intoxilyzer 5000 breath test to reveal the results of the first sample during the interval between administration of the first and second sample periods.

The officer here did not stop the time running on the Intoxilyzer and did not prevent O'Brian from blowing into the machine. O'Brian began to blow the second sample, but then became belligerent and yelled at the officer for the balance of the four minutes. There was no evidence that O'Brian was incapable of blowing the second sample. Because O'Brian did not have a right to know the results of the first breath sample, his refusal to give the second sample was unreasonable.

## DECISION

The district court correctly concluded that O'Brian's refusal to give a second breath sample, on the ground that he was not told the result of the first breath sample, was unreasonable, and constituted a refusal to submit to testing.

**Affirmed.**