*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1154**

Thushari Rangika Alahapperuma, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed May 6, 2024
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CV-22-4820

Charles S. Clas Jr., Wilson & Clas, Minneapolis, Minnesota (for appellant)

Keith Ellison, Attorney General, Madeline M. Sheehy, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Cochran, Presiding Judge; Johnson, Judge; and Cleary, Judge.*

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

The commissioner of public safety revoked Thushari Rangika Alahapperuma's driver's license after she was arrested for driving while impaired and did not provide a

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

breath sample. Alahapperuma petitioned the district court for a rescission of the revocation. The district court denied the petition. We conclude that the district court did not err by finding that a state trooper had probable cause to believe that Alahapperuma was driving while impaired, by finding that Alahapperuma refused to submit to chemical testing, and by finding that Alahapperuma was not entitled to an independent breath test. Therefore, we affirm.

## FACTS

The events giving rise to this appeal occurred during the evening of March 29, 2022. The following recitation of the relevant facts is based on the testimony of a state trooper and this court's review of a video-recording made by his body-worn camera.

At approximately 10:30 p.m., Trooper Miller was on patrol on North Third Street in downtown Minneapolis, observing vehicles at the entrance ramp to westbound interstate highway 394. The trooper saw a red sedan that appeared to be speeding and used his radar device to determine that the vehicle was traveling at 63 miles per hour in a 45-mile-per-hour zone. The trooper followed the vehicle onto the interstate and saw it "weaving over the lines significantly." When the trooper activated his lights and sirens, the vehicle did not stop. The vehicle exited the interstate onto northbound state highway 100 and then exited and turned onto westbound Glenwood Avenue without stopping. The trooper then performed a "PIT maneuver" (*i.e.*, "precision immobilization technique"), which brought the vehicle to a stop.

Trooper Miller testified that, as soon as he approached the driver of the vehicle, Alahapperuma, he noticed a strong smell of alcohol, bloodshot and watery eyes, and slurred

speech. Based on that information, the trooper believed that Alahapperuma was impaired. In addition, Alahapperuma was "extremely hysterical" and yelling. The trooper administered the horizontal-gaze-nystagmus (HGN) test, which revealed four of six possible clues of impairment. The trooper asked Alahapperuma to take a preliminary breath test (PBT), but she did not follow the instructions and, thus, did not provide a breath sample.

Trooper Miller arrested Alahapperuma for driving while impaired (DWI) and transported her to the Hennepin County jail. Once there, the trooper read Alahapperuma the statutory breath-test advisory. Alahapperuma indicated that she wanted to speak with an attorney. After she was given 55 minutes for that purpose, the trooper asked her whether she would take a breath test. The trooper needed to ask the question approximately 15 times because Alahapperuma continually asked questions and argued with the trooper.

Alahapperuma eventually indicated her agreement to submit to a breath test. Trooper Miller explained to her how to provide a breath sample. Alahapperuma repeatedly blew weakly and then stopped blowing. As a result, she did not provide an adequate sample during the allotted three-minute period. The trooper explained further how to blow into the mouthpiece and gave Alahapperuma a second three-minute opportunity. Alahapperuma did not blow forcefully and steadily enough and did not maintain a tight seal around the mouthpiece. In addition, Alahapperuma often stopped blowing and removed the mouthpiece from her mouth before she had provided an adequate sample. At the end of each three-minute period, the breath-test machine indicated that the sample was

3

deficient. Trooper Miller determined that Alahapperuma had refused to provide a breath sample.

The commissioner of public safety revoked Alahapperuma's driver's license. Alahapperuma petitioned the district court for a rescission of the revocation, which was stayed pending an implied-consent hearing. The district court conducted a hearing in January 2023. Alahapperuma challenged the revocation on three grounds. In June 2023, the district court filed an order in which it sustained the revocation. Alahapperuma appeals.

**DECISION**

Alahapperuma argues that the district court erred by denying her petition to rescind the revocation of her driver's license. She renews the three arguments that she presented to the district court.

Under Minnesota's implied-consent law, a person must submit to a blood, breath, or urine test if a law-enforcement officer has probable cause to believe that the person was driving while impaired and if the person has been lawfully arrested for that offense. Minn. Stat. § 169A.51, subd. 1 (2020); *see also* Minn. Stat. § 169A.20 (Supp. 2021) (defining criminal offense of DWI). If an officer certifies that there was probable cause to believe that the person was driving while impaired and that the person refused to submit to chemical testing, the commissioner must revoke the person's driver's license. Minn. Stat. § 169A.52, subd. 3 (2020). A person whose driver's license has been revoked may petition a district court for judicial review of the revocation. Minn. Stat. § 169A.53, subd. 2 (2020). On appeal, this court applies a clear-error standard of review to a district court's findings of fact and a *de novo* standard of review to a district court's resolution of questions of law.

4

*Jasper v. Commissioner of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002); *Harrison v. Commissioner of Pub. Safety*, 781 N.W.2d 918, 920 (Minn. App. 2010).

## I. Probable Cause

Alahapperuma first argues that the district court erred by finding that Trooper Miller had probable cause to believe that she was driving while impaired.

To arrest a person for the offense of DWI, an officer must have probable cause to believe that the person is under the influence of alcohol, a controlled substance, or an intoxicating substance. Minn. Stat. § 169A.20, subd. 1; *see also* Minn. Stat. § 169A.52, subd. 3 (requiring probable cause of violation of section 169A.20 to revoke driver's license). "Probable cause to arrest a person for DWI exists when the facts and circumstances available at the time of arrest reasonably warrant a prudent and cautious officer to believe that an individual was driving while under the influence." *Reeves v. Commissioner of Pub. Safety*, 751 N.W.2d 117, 120 (Minn. App. 2008). "The existence of probable cause depends on the facts of each individual case." *State v. Moorman*, 505 N.W.2d 593, 598-99 (Minn. 1993). "An officer needs only one objective indication of intoxication to constitute probable cause to believe a person is under the influence." *State v. Kier*, 678 N.W.2d 672, 678 (Minn. App. 2004). "To establish probable cause, facts need not exclude all innocent explanations for conduct nor conclusively show that conduct was illegal." *State v. Hawkins*, 622 N.W.2d 576, 577 (Minn. App. 2001).

In this case, the district court rejected Alahapperuma's challenge to the existence of probable cause by relying on Trooper Miller's testimony that he observed Alahapperuma's bloodshot and watery eyes, detected slurring in her speech, and smelled the odor of alcohol.

Alahapperuma contends that the district court improperly relied on Trooper Miller's testimony about the smell of alcohol on the ground that his perception was not corroborated by other officers. Alahapperuma asserts that the body-cam recording shows that Trooper Miller asked another officer whether he smelled alcohol but that the other officer did not respond. The district court rejected this contention by noting that the body-cam recording shows that the other officer handed Trooper Miller a PBT device and later said aloud that he could smell alcohol. The district court also noted that a third officer asked Trooper Miller whether he was going to administer the HGN test. Alahapperuma asserts that the evidence about other officers' suspicions is not weighty because the statements were made after Alahapperuma's arrest. Nonetheless, the fact that other officers smelled alcohol on Alahapperuma after her arrest tends to corroborate Trooper Miller's testimony that he smelled alcohol before her arrest. Importantly, the district court expressly stated that Trooper Miller's testimony on this issue was credible and believable. We are not at liberty to disregard the district court's credibility determination. *State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012).

Alahapperuma also contends that Trooper Miller's testimony about Alahapperuma's bloodshot and watery eyes and slurred speech was "directly contradicted" by the body-cam recording, which she asserts does not show those indicia of impairment. The district court also rejected this contention. The district court stated that Trooper Miller "has received specialized training in enforcing" DWI laws and testified that "he is most accurately able to assess whether someone is impaired during a live, face-to-face encounter because all of his senses are engaged." The district court expressly stated that Trooper

6

Miller's explanation was credible and that police officers, "due to their training, are likely to pick up indications of intoxication that a lay person may not or that might not be otherwise discernible on video." For that reason, the district court found that Trooper Miller's testimony about Alahapperuma's bloodshot and watery eyes and slurred speech was "not directly contradicted by the evidence" and specifically stated that Trooper Miller's testimony on the issue was "compelling and trustworthy." Again, we are disinclined to disregard a district court's express credibility determination. *See id.* In addition, the district court's analysis is consistent with prior opinions of this court in which we have concluded that video recordings did not contradict witness testimony. *See State v. Elder*, No. A21-1324, 2022 WL 16910605 (Minn. App. Nov. 14, 2022); *State v. Finley*, No. A18-1597, 2020 WL 132168 (Minn. App. Jan. 13, 2020).

Thus, the district court did not err by finding that Trooper Miller had probable cause to believe that Alahapperuma was driving while impaired.

## II. Refusal

Alahapperuma also argues that the district court erred by finding that she refused to submit to chemical testing.

The district court found that Alahapperuma refused for two reasons. First, the district court found that Alahapperuma refused by intentionally engaging in conduct designed to frustrate the testing process. Second, the district court found that Alahapperuma refused as a matter of law, pursuant to statute, because she did not provide two adequate breath samples.

7

## A.     Refusal by Conduct

The district court's first finding of refusal is consistent with this court's caselaw. "If a driver expresses verbal agreement to submit to chemical testing but does not provide an adequate sample, his or her conduct may be deemed a refusal to submit to chemical testing." *Stevens v. Commissioner of Pub. Safety*, 850 N.W.2d 717, 721 (Minn. App. 2014). "To determine whether a driver's failure to provide a sample constitutes refusal, a court should look to the driver's words and actions." *Id.* at 722. In *Sigfrinius v. Commissioner of Public Safety*, 378 N.W.2d 124 (Minn. App. 1985), we concluded that a refusal occurred because the appellant verbally agreed to a breath test but did not remove a breath mint from his mouth despite being told to do so five or six times. *Id.* at 125-26. Similarly, in *Connolly v. Commissioner of Public Safety*, 373 N.W.2d 352 (Minn. App. 1985), we affirmed a finding of refusal based on evidence that the appellant thwarted a breath test by blowing around and not into the mouthpiece. *Id.* at 353-54.

In this case, the district court credited Trooper Miller's testimony that Alahapperuma thwarted the breath test by not following directions and intentionally failing to provide a sufficient breath sample. The district court cited evidence that Alahapperuma was given two separate three-minute opportunities to provide adequate breath samples but did not blow hard enough to produce a sample and often stopped blowing in the middle of an attempt. The district court concluded its discussion of this issue by finding "the observations of Trooper Miller trustworthy and compelling" and "deem[ing] Petitioner's failure to provide a sample during the two sample windows, despite the continued instructions, an implied refusal of the test." On appeal, Alahapperuma does not directly

8

challenge these findings. Our review of the body-cam recording confirms Trooper Miller's testimony and the district court's findings.

## B.     Refusal as a Matter of Law

The district court's second finding of refusal is based on a statute, which provides, "For purposes of section 169A.52 (revocation of license for test failure or refusal), when a test is administered using an infrared or other approved breath-testing instrument, failure of a person to provide two separate, adequate breath samples in the proper sequence constitutes a refusal." Minn. Stat. § 169A.51, subd. 5(c). The statute also provides, "If the first breath test is deficient . . . , a second breath test must be administered." *Id.*, subd. 5(e). In addition, "Two deficient breath tests . . . constitute a refusal." *Id.*, subd. 5(f).

Alahapperuma does not dispute that the Datamaster breath-test machine reported that both of her samples were deficient. She contends that she did not have a full opportunity to provide an adequate breath sample because Trooper Miller stopped the second administration of the test with 10 seconds remaining. She relies on *Genia v. Commissioner of Public Safety*, 382 N.W.2d 284 (Minn. App. 1986), a consolidated appeal in which officers interrupted and concluded two breath tests after determining that the drivers were intentionally not blowing into the mouthpieces with enough force to create adequate samples. *Id.* at 285. In each instance, the breath-test machine did not indicate whether the breath sample was adequate or deficient. *Id.* In each case, the district court found that the commissioner did not prove a refusal under the statute because the officer terminated the test before the end of the statutory time period. *Id.* On appeal, this court affirmed, reasoning that, for purposes of a refusal as a matter of law, the breath-test

9

machine, "not the police officer, is to determine the adequacy of a breath sample." *Id.* at 286 (citing Minn. Stat. § 169.123, subd. 2(b) (1984)).

The result was different in *Cole v. Commissioner of Public Safety*, 535 N.W.2d 816 (Minn. App. 1995), in which the driver provided one adequate breath sample but was unable to provide a second. *Id.* at 817. The officer replaced the mouthpiece three times during the second opportunity. *Id.* The district court denied the petition to rescind the revocation. *Id.* On appeal, we affirmed, reasoning that the officer allowed the driver to attempt to provide a breath sample for the full statutory time period, during which time the driver "had at least three significant opportunities to blow into" the breath-test machine. *Id.* at 818.

In this case, the body-cam recording shows that Trooper Miller assisted Alahapperuma for all of the first three-minute period and for all but the last 10 seconds of the second three-minute period. At that point in time, Alahapperuma had stopped blowing and had removed the mouthpiece from her own mouth. Trooper Miller took the mouthpiece from her hand and said, "It's going to time out. It's not going to work. Okay, we're all done." Trooper Miller later testified that he did not continue until the very end of the three-minute period because "there was no way to give a sample at that point." Based on our review of the video-recording of both of Alahapperuma's attempts to provide a breath sample, we agree that the point of futility had been reached and that Trooper Miller's retrieval of the mouthpiece, when Alahapperuma did not have it in her mouth, did not interfere with an effort that otherwise would have been successful.

10

The caselaw cited by Alahapperuma does not compel a finding that she did not refuse as a matter of law. The maximum amount of time lost at the end of her second opportunity—10 seconds—is much less than the time lost in *Genia*, in which the breath test administered to one driver (Ritter) was terminated approximately halfway into the statutorily allotted time. 382 N.W.2d at 285. Alahapperuma was allowed to spend far more time blowing than was the driver in *Cole*, who argued that he was allowed to blow for a total of only 60 seconds. 535 N.W.2d at 817. Furthermore, in this case, the breath-test machine reported that both of Alahapperuma's samples were deficient, in contrast with *Genia*, in which the breath-test machines did not indicate whether a breath sample was adequate or deficient. *See* 382 N.W.2d at 285. For all of these reasons, *Genia* does not foreclose the conclusion that Alahapperuma refused as a matter of law pursuant to section 169A.51, subdivision 5(c).

Thus, the district court did not err by finding that Alahapperuma refused to submit to chemical testing.

### III. Independent Test

Alahapperuma last argues that the district court erred by concluding that she did not have a statutory right to an independent test. This argument is based on the fact that, after Trooper Miller determined that she had refused, Alahapperuma asked him, "Can I do it one more time?" and "Can I please try to do it again?"

Alahapperuma's argument is based on the following statute:

> The person tested has the right to have someone of the person's own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer;

> provided, that the additional test sample on behalf of the person is obtained at the place where the person is in custody, after the test administered at the direction of a peace officer, and at no expense to the state.

Minn. Stat. § 169A.51, subd. 7(b).

The district court rejected this argument for two reasons, one legal and one factual. The district court ruled that, under the statute, Alahapperuma was not entitled to an independent test because she did not actually provide a breath sample for chemical testing. This reasoning is consistent with the statutory text, which allows a "person *tested*" to obtain an independent chemical test "*in addition to* any administrated" by a law-enforcement officer and only "*after* the test administered at the direction of a peace officer." *See id.* (emphasis added). The supreme court has held that submission to "the state's test" is a "condition precedent to the right to an independent test." *State v. Larivee*, 656 N.W.2d 226, 229-30 (Minn. 2003). Alahapperuma does not directly challenge the district court's reasoning that she has not satisfied a condition precedent of a request for an independent test.

The district court also ruled that Alahapperuma did not actually request an independent test. The district court found that Alahapperuma's request to "do it again" was, in effect, a request for "a third sample window and not an independent test." The district court's factual finding is supported by the body-cam recording.

Thus, the district court did not err by concluding that Alahapperuma did not have a statutory right to an independent test.

12

In sum, the district court did not err by denying Alahapperuma's petition to rescind the revocation of her driver's license.

**Affirmed.**