Toni Leigh BROOKS, (C3–98–111), Mikell John Miller, (C5–98–112), Brian Austin Brekken, (C7–98–113), petitioner, Appellant, Richard J. Twiford, (C5–98–269), Dale Alan Wargin, (C1–98–270), Julie C. Magnus, (C3–98–271), Appellant,

v.

### COMMISSIONER OF PUBLIC SAFETY, Respondent

C3–98–111, C5–98–112, C7–98–113, C5–98–269, C1–98–270, C3–98–271.

Court of Appeals of Minnesota.

Sept. 22, 1998.

Review Denied Nov. 24, 1998.

Samuel A. McCloud, Kelly Vince Griffitts, Shakopee, for appellants.

Hubert H. Humphrey III, Attorney General, Joel A. Watne, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by PETERSON, P.J., AMUNDSON and HOLTAN, JJ.

## OPINION

HARVEY A. HOLTAN, Judge.*

The drivers appeal from trial court orders sustaining the revocation of their drivers' licenses. They challenge on statutory and constitutional grounds the lawfulness of the use of Intoxilyzer test samples that allegedly

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap- pointment pursuant to Minn. Const. art. VI, § 10.

exceeded the minimum adequate sample. We affirm.

## FACTS

The facts are undisputed. After being arrested for DWI offenses, each of the appellants took an Intoxilyzer test pursuant to the implied consent law. The Intoxilyzer indicates that the driver has provided an adequate sample by showing a zero to the left of the decimal point of the display of the driver's alcohol concentration. Each of the appellants was required to breathe into the Intoxilyzer for a second or a few seconds after the instrument registered zero. None of the officers who administered the test knew the alcohol concentration reading at the time the instrument registered the zero. All of the final test results showed an alcohol concentration of .10 or more.

Appellants petitioned separately for judicial review. After a hearing, each district court sustained the revocation. The drivers appealed and this court consolidated the cases.

## ISSUES

I. Did the district court err by determining the Intoxilyzer test results were adequate under the implied consent statute?

II. Do appellants have a constitutional "due process" right to provide no more than a minimum sample that the Intoxilyzer will accept as adequate?

## ANALYSIS

### I.

■ A district court's conclusion of law will be overturned only if it erroneously applied the law to the facts. *Dehn v. Commissioner of Pub. Safety,* 394 N.W.2d 272, 273 (Minn.App.1986).

■ Appellants argue that the commissioner failed to show their alcohol concentration was .10 or more at the time they provided an adequate breath sample as indicated by the initial display of the zero. They contend that because the machine measured a sample that allegedly exceeded the adequate sample required by Minn.Stat. § 169.123,

subd. 2b (1996), the revocation should be rescinded. This court has rejected the argument. *Weierke v. Commissioner of Pub. Safety,* 578 N.W.2d 815, 816 (Minn.App.1998). We wish to emphasize further that the sample amount that registers when the Intoxilyzer's display indicates zero is not a final test result under the implied consent law.

In interpreting a statute, the appellate court must "ascertain and effectuate" the legislature's intent. Minn.Stat. § 645.16 (1996); *Olson v. Ford Motor Co.,* 558 N.W.2d 491, 494 (1997). The legislature does not intend an absurd result and will favor the public interest over any private interest. Minn.Stat. § 645.17(1), (5) (1996).

The legislature through the implied consent law and the commissioner through promulgated rules have carefully specified how the test result is to be obtained. *See* Minn. Stat. § 169.128 (1996) (providing commissioner may promulgate rules to carry out provisions of section 169.123). For an Intoxilyzer, the test consists of "one adequate breath sample, one calibration standard analysis, and a second, adequate breath sample analysis." Minn.Stat. § 169.123, subd. 2b(a); *see* Minn. R. 7502.0430, subpt. 1 (1997) (using same standard). A sample is deemed "adequate if the instrument analyzes the sample and does not indicate the sample is deficient." *Id.,* subd. 2b(b); *see* Minn. R. 7502.0430, subpt. 2 (1997) (for Intoxilyzer, sample accepted as valid by instrument is considered adequate). A person's failure to provide "two separate, adequate breath samples in the proper sequence constitutes a refusal." *Id.,* subd. 2b(c). Interpretation or evaluation of an alcohol concentration reading from an Intoxilyzer test "means reading the reported numerical value resulting from analyses of the breath samples." Minn. R. 7502.0100, subpt. 4 (1997).

The commissioner and the Bureau of Criminal Apprehension (BCA) Forensic Science Laboratory approved the use of the Intoxilyzer 5000. Minn. R. 7502.0420, subpt. 2 (1997). In using an Intoxilyzer, the procedures that are "approved and certified to be valid and reliable testing procedures" by the BCA must be followed. Minn. R. 7502.0410.

There is no claim here that these procedures were not followed.

Under this law, we must defer to the decision by both the legislature and the commissioner that the test procedures described above must be used to obtain the test result upon which the revocation may be based. Minn.Stat. § 169.123, subd. 4(e) (revocation for alcohol concentration of .10 or more). It would be an absurd result if we were to agree that the sample result displayed at the time the machine registers zero could constitute a test result for purposes of revoking a driver's license. Testimony indicated that the most accurate reading comes from the deep-lung air. There is no showing this first zero sample would provide the desired accurate and reliable measurement of the alcohol concentration, or that it measured the alveolar or deep-lung air sought. A proper test result may be obtained only by following the procedures set out in the statute and regulations, and appellants cannot prevail.

## II.

### A. Substantive Due Process—Fundamental Fairness

■ Appellants also raise due process challenges to the revocations. *Weierke* did not reach the due process issues, and we address each argument below. *Weierke*, 578 N.W.2d at 816. In a constitutional challenge, the interpretation of a statute is a question of law subject to de novo review. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993).

It has long been settled that traffic safety is an important state interest. *Craig v. Boren*, 429 U.S. 190, 199–200, 97 S.Ct. 451, 458, 50 L.Ed.2d 397 (1976); *see also Szczech v. Commissioner of Pub. Safety*, 343 N.W.2d 305, 306 (Minn.App.1984) (noting "the trail of broken lives, bodies, and property left by drunk drivers * * * on our highways."). The legislature has enacted strict implied consent laws to deter drivers from endangering themselves and others while driving under the influence of alcohol by imposing civil and criminal penalties. *Szczech*, 343 N.W.2d at 306–07; Minn.Stat. § 169.121 (1996 & Supp.1997) (criminal DWI law); Minn.Stat. § 169.123 (1996 & Supp.1997) (civil implied consent law).

While the statute does not provide a maximum quantity for a sample, Minn. R. 7502.0410 (1997) authorizes the BCA to establish the procedures for analyzing breath samples. *Weierke*, 578 N.W.2d at 816. Minn. R. 7502.0430, subpt. 2, provides that any sample accepted as valid by the Intoxilyzer 5000 is considered adequate. *See* Minn.Stat. § 169.128 (authorizing commissioner of public safety to promulgate rules to carry out Minn. Stat § 169.123). Under Minnesota law, the breath test "consists of analyses in the following sequence: one adequate breath sample analysis, one calibration standard analysis, and a second, adequate breath sample analysis." Minn.Stat. § 169.123, subd. 2b(a). A sample is deemed adequate if "the instrument analyzes the sample and does not indicate that the sample is deficient." *Id.*, subd. 2b(b).

■ Appellants do not challenge the reliability of the test, but rather assert that the method used by the police officers violates notions of fundamental fairness inherent in due process. Their argument is based on the underlying assumption that an adequate sample is delivered when the Intoxilyzer registers zero, not when the machine measures the alcohol concentration a few seconds later, and they contend the latter reading would provide a higher result. They contend (1) that the test result should be based on an adequate breath sample as measured by the Intoxilzyer when it registers zero; and (2) that the sample from two people with the same alcohol concentration will render different results unless both are measured at the time the Intoxilyzer reads zero, thus violating their due process rights.

■ "Fundamental fairness is the quintessence of the due process clause." *McDonnell v. Commissioner of Pub. Safety*, 460 N.W.2d 363, 380 (Minn.App.1990) (Wozniak, C.J., concurring in part, dissenting in part), *aff'd in part, rev'd in part*, 473 N.W.2d 848 (Minn.1991).

* * * Probably the most that can be said in a general way is that due process embodies a test of fundamental fairness in all

steps of the proceedings; that our sense of fairness is outraged by certain assertions of jurisdiction on the part of States unconnected with the parties or with the controversy; and that this sense of unfairness stems partly from the inconvenience and expense involved, partly from the idea of unfair surprise, partly from anticipation of an improper choice of law, and partly from more general notions of the limits of a state's rightful sovereignty.

David P. Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois*, U. of Ill. L. Forum 533, 535 (1963). Appellants have the burden of demonstrating that the manner in which the Intoxilyzer is administered is not fair. *Ruzic v. Commissioner of Pub. Safety*, 455 N.W.2d 89, 91 (Minn.App.1990), *review denied* (Minn. June 26, 1990).

In this case, appellants have not produced any evidence that they were treated differently in terms of length of breath sample from each other or other drivers. Nor have they offered any evidence to prove that their test results would have been less than .10 had they stopped blowing exactly when the zero registered on the Intoxilyzer's display. Furthermore, appellants have not alleged or demonstrated that they were victims of vindictive and malicious police officers manipulating the test. Contrary to appellants' argument, it is the Intoxilyzer, not the officer, that determines the adequacy of the breath sample. *Johnson v. Commissioner of Pub. Safety*, 400 N.W.2d 195, 198 (Minn.App.1987), *review denied* (Minn. Apr. 17, 1987); *see Cole v. Commissioner of Pub. Safety*, 535 N.W.2d 816, 818 (Minn.App.1995).

Thus, appellants have failed to show a direct and personal harm resulting from the alleged denial of constitutional rights. *Davis v. Commissioner of Pub. Safety*, 509 N.W.2d 380, 391–92 (Minn.App.1993), *aff'd*, 517 N.W.2d 901 (Minn.1994). Accordingly, we find there was no violation of appellants' due process rights.

## B. Federal and State Procedural Due Process

 Procedural due process imposes constraints on governmental procedures that deprive individuals of property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments to the United States Constitution and article I, section 7, of the Minnesota Constitution. A license to drive is an important property interest. *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). Some form of hearing is required before an individual is finally deprived of a property interest. *Wolff v. McDonnell*, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

 To resolve whether the procedures developed by the BCA and provided under rule 7502.0410 "are constitutionally sufficient requires analysis of governmental and private interests that are affected." The identification of the specific dictates of procedural due process requires the consideration of three distinct factors:

(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see Heddan v. Dirkswager*, 336 N.W.2d 54, 59 (Minn.1983) (applying test to implied consent procedures).

Appellants argue that suspected intoxicated drivers are being treated differently from each other because the officer administering the test may stop some subjects at the zero while requiring other subjects to blow past

the zero reading, thus violating their due process rights.

Appellants have not proven that the officers manipulated the test. In fact, each officer testified at the hearing that he is trained to ask subjects to exhale into the Intoxilyzer until they are unable to exhale. Finally, appellants produced no evidence that any of the test results was lower at the zero reading than at the time each driver finished blowing into the machine. Accordingly, appellants have failed to show a "direct and personal harm resulting from the alleged denial of constitutional rights." *Davis*, 509 N.W.2d at 391–92.

### C. Exculpatory Evidence

Appellants argue that the commissioner had an obligation to disclose any evidence in its possession that is favorable to the defense or that may "tend to exculpate [the defendant] or reduce the penalty." *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). Appellants contend that requiring them to continue to blow into the Intoxilyzer after the machine registered zero, indicating an adequate sample had been obtained, is tantamount to destroying evidence. They theorize that by doing so the officer is destroying evidence of the allegedly lower alcohol concentration at the time the machine registered zero, which would exculpate the driver.

 Appellant assumes *Brady* is applicable to a civil implied consent proceeding. But "an implied consent hearing is not a de facto criminal proceeding and due process rights associated with criminal trials do not apply." *Ruffenach v. Commissioner of Pub. Safety*, 528 N.W.2d 254, 256 (Minn.App.1995) (addressing a constitutional right to exculpatory evidence); *see California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984) ("constitutional right to have access to potentially exculpatory evidence is rooted in the criminal justice system" where access to evidence "protect[s] the innocent from erroneous conviction and ensur[es] the integrity of our criminal justice system"). Because an implied consent hearing is not a criminal proceeding, *Brady* is inapplicable.

### DECISION

The district courts properly sustained the revocation of appellants' drivers' licenses. The implied consent statute permits testing of a sample that is greater than the minimum adequate sample indicated by the Intoxilyzer and is silent on the issue of a maximum standard for an adequate breath sample. Moreover, appellants have not shown that testing a larger-than-minimally-adequate sample prejudiced their interests in any manner. Finally, appellants were unable to demonstrate their due process rights were violated.

**Affirmed.**