**STATE of Minnesota, Respondent,**

v.

**Robert Allan RADER, Appellant.**

No. CX–98–2177.

Court of Appeals of Minnesota.

July 20, 1999.

Mike Hatch, Attorney General, St. Paul, for respondent.

Clayton M. Robinson, Jr., St. Paul City Attorney, Joel A. Franklin, Assistant City Attorney, St. Paul, for respondent.

Samuel A. McCloud, Kelly Vince Griffitts, Carson James Heefner, Shakopee, for appellant.

Considered and decided by RANDALL, Presiding Judge, DAVIES, Judge, and FOLEY, Judge.*

## OPINION

DAVIES, Judge

Appellant argues that his conviction for gross misdemeanor driving with an alcohol concentration of .10 or more should be reversed because the state failed to prove beyond a reasonable doubt that his alcohol concentration was above .10 at the point the Intoxilyzer registered an adequate sample. Appellant also argues that his substantive and procedural due process rights were violated when he was required to continue blowing into the machine after it registered an adequate sample and that, by doing so, the state destroyed possibly exculpatory evidence. We affirm.

### FACTS

The stipulated facts are as follows. A state trooper stopped appellant Robert Allan Rader for speeding on Interstate 94. The officer noticed the strong odor of an alcoholic beverage on Rader's breath. Rader failed field sobriety tests administered by the officer. Rader was placed under arrest and submitted to a breath test. The breath test, performed on an

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

Intoxilyzer 5000, reported Rader's alcohol concentration to be .13.

A complaint filed in Ramsey County District Court charged Rader with three driving-under-the-influence counts. At the omnibus hearing, Rader waived his right to a jury trial and agreed to submit the count of gross misdemeanor driving with an alcohol concentration of .10 or more to the district court on stipulated facts. The state dismissed the remaining counts.

Rader and the state stipulated that: (1) an adequate breath sample is given when the Intoxilyzer displays a zero to the left of the decimal point on the display screen; (2) the officer had Rader continue to blow after the machine registered an adequate sample; (3) the reported concentration continues to rise until the person is told to stop blowing; (4) the officer did not know the reported value when the zero appeared; (5) the reported value could have been under .10 at the point the machine reported an adequate sample; and (6) the training manual for the Intoxilyzer 5000 sets forth how the officer is to respond to information when it appears on the machine's display.

The matter was continued pending this court's decision in *Brooks v. Commissioner of Pub. Safety*, 584 N.W.2d 15 (Minn.App. 1998), *review denied* (Minn. Nov. 24, 1998). Following the *Brooks* decision, the district court found Rader guilty of gross misdemeanor driving with an alcohol concentration of .10 or more. The district court sentenced Rader to one year in the county jail and fined him $3,000. The sentence and payment of the fine were stayed and Rader was placed on probation.

### ISSUES

I. Must the state prove beyond a reasonable doubt that the indicated alcohol concentration was .10 or more at the moment the Intoxilyzer registered an adequate breath sample?

II. Did the state violate appellant's substantive and procedural due process rights by having him continue to blow into the Intoxilyzer after the machine registered an adequate breath sample?

III. Did the state destroy potential exculpatory evidence by having appellant continue to blow into the Intoxilyzer after the machine registered an adequate breath sample?

### ANALYSIS

### I. Valid and Reliable Test Results

Rader argues that the state failed to prove beyond a reasonable doubt that his alcohol concentration was .10 or more at the time the Intoxilyzer registered an adequate sample. This argument was rejected in *Weierke v. Commissioner of Pub. Safety*, 578 N.W.2d 815 (Minn.App.1998), and later in *Brooks v. Commissioner of Pub. Safety*, 584 N.W.2d 15 (Minn.App. 1998), *review denied* (Minn. Nov. 24, 1998). In *Weierke*, this court held that

> [t]he implied consent statute does not require testing at the precise point at which a minimum adequate breath sample is provided and it permits testing of a sample that is greater than the minimum adequate sample indicated by the Intoxilyzer machine.

*Weierke*, 578 N.W.2d at 816. The court noted, "[t]he governing statute dictates a minimum quantity for a sample but does not suggest that the sample may not be larger than the minimum." *Id.* Relying on *Weierke*, the court in *Brooks* held that

> [t]he implied consent statute permits testing of a sample that is greater than the minimum adequate sample * * * and is silent on the issue of a maximum standard for an adequate breath sample.

*Brooks*, 584 N.W.2d at 20.

An Intoxilyzer test is comprised of "one adequate breath sample analysis, one calibration standard analysis, and a second, adequate breath sample analysis." Minn.Stat. § 169.123, subd. 2b(a) (1998). The legislature has provided that a test sample is deemed "adequate if the instru-

ment analyzes the sample and does not indicate the sample is deficient." *Id.*, subd. 2b(b) (1998). If the above statutory procedures are followed, the test result is deemed proper and reliable. *Brooks*, 584 N.W.2d at 17–18. Once the state makes a prima facie showing of the test's reliability, the burden shifts to the driver to introduce evidence of the test's unreliability. *See Przymus v. Commissioner of Pub. Safety*, 488 N.W.2d 829, 833 (Minn.App.1992) (once state establishes prima facie reliability of test administration, test opponent must suggest reasons why test is untrustworthy), *review denied* (Minn. Sept. 15, 1992).

■ Here, the proper testing procedures were followed and the Intoxilyzer indicated that it received adequate samples. The state established the prima facie reliability of the test results and the burden then shifted to Rader to present evidence that the test results were somehow untrustworthy. Rader failed to present any evidence that a quantity of breath greater than the minimum adequate sample may indicate a higher alcohol concentration result than actually exists. Even though the parties stipulated that the alcohol concentration continues to rise as a driver blows past the point the Intoxilyzer indicates an adequate minimum sample, Rader has not demonstrated that the test result measured an amount above his actual alcohol concentration or that the result was not consistent with the statutory mandates. Like the defendant in *Weierke*, Rader "has not shown that a quantity of breath greater than the minimum adequate sample * * * inaccurately reflects the actual alcohol concentration in the body." *Weierke*, 578 N.W.2d at 816.

■ Consistent with the decisions in *Weierke* and *Brooks*, we hold that the state is not required to prove that a defendant's alcohol concentration is indicated to be .10 or more at the *precise moment* the machine registers an adequate sample. The state is required only to show that the directions of the legislature are followed.

## II. Substantive and Procedural Due Process

■ Rader challenges the method used by the police officer during the testing process, arguing that it violated his substantive and procedural due process rights. Rader contends that breath tests are not administered fairly because each driver is tested by a different officer and each officer requires differing amounts of breath to be measured by the breathalyzer. The due process arguments presented by Rader were specifically rejected in *Brooks*.

In *Brooks*, the drivers argued that their state and federal procedural due process rights were violated because the method allowed suspected intoxicated drivers to be treated differently from each other—an officer administering the test might stop some subjects at the moment an adequate breath sample was obtained while requiring other subjects to continue blowing past that point. 584 N.W.2d at 19–20. The court held that the drivers failed to prove officers manipulated the tests. *Id.* at 20. The court held there were no substantive or procedural due process violations because the drivers "failed to show a direct and personal harm resulting from the alleged denial of constitutional rights." *Id.* at 19 (citation omitted).

■ In the present case, Rader presented no evidence that the officer manipulated the test or that he purposefully treated Rader differently than he treated other drivers. Because Rader failed to show any intended, direct, and personal harm from the alleged denial of his constitutional rights, we conclude that neither his substantive nor procedural due process rights were violated by the testing method used by the police officer.

## III. Destruction of Evidence

■ Lastly, Rader presents a *Brady* challenge, arguing that the testing method used by the officer destroyed evidence. *See Brady v. Maryland*, 373 U.S. 83, 87,

83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) (holding suppression of material evidence by prosecution violates due process rights); *State v. Schmid,* 487 N.W.2d 539, 541 (Minn.App.1992) (holding due process clause prohibits destruction of material exculpatory evidence), *review denied* (Minn. Sept. 15, 1992). This issue was not presented to the district court. A reviewing court need not address constitutional issues raised for the first time on appeal. *State v. Sorenson,* 441 N.W.2d 455, 457 (Minn.1989). Because Rader failed to raise his *Brady* challenge in the district court, it is not properly preserved on appeal.

 But a court may, in its discretion, decide to hear such issues when it is in the interests of justice and would not work an unfair surprise on a party. *Id.* Even though the issue is not properly before us, we conclude Rader cannot prevail because he failed to present any evidence indicating that the officer intentionally destroyed evidence, that the allegedly destroyed evidence was favorable to him, or that the exculpatory value of the evidence was apparent and material. *See State v. Friend,* 493 N.W.2d 540, 545 (Minn.1992) (for claim of lost or destroyed evidence to be reversible error, defendant must show destruction was intentional and exculpatory value of evidence was apparent and material).

## DECISION

The state is not required to prove that a defendant's alcohol concentration reading is .10 or more at the precise moment the Intoxilyzer indicates that it has received an adequate test sample. A driver's substantive and procedural due process rights are not violated when a police officer has the driver continue to blow into the Intoxilyzer after the machine indicates an adequate sample has been provided. An issue not presented to the district court will not be considered for the first time on appeal even if it involves an alleged violation of defendant's constitutional rights.

**Affirmed.**

RANDALL, Judge (concurring specially).

I concur in the result. The majority correctly states existing law. I write separately to point out a serious problem with the way we have approached this issue. We continue to follow the reasoning of *Weierke v. Commissioner of Pub. Safety,* 578 N.W.2d 815 (Minn.App.1998), and *Brooks v. Commissioner of Pub. Safety,* 584 N.W.2d 15 (Minn.App.1998), *review denied* (Minn. Nov. 24, 1998), which assumes that the test is fair and there is no manipulation of the results. What defense counsel in this case, and in other previous cases, has continued to argue, and quite logically, is that there is a tremendous potential for manipulation, and the state is in control of the manipulation. The specter of manipulation could be chased away if the Intoxilizer 5000 was programmed to print out the BAC instantaneously, and then shut down, when the machine gives the signal that an adequate breath sample has been taken in. Both sides agree that the machine registers a visible signal, by ear and/or sight, when the machine has received an adequate sample. The stipulated facts are set out correctly in the majority. Stipulated fact number two shows that the officer had Rader *continue to blow* after the machine registered an adequate sample. Stipulated fact number three tells us that the reported concentration continues to rise (to the driver's detriment) until the person is told to stop blowing. Quite honestly, I have no idea where the State of Minnesota *in a criminal case* gets the authority to require a suspect, under penalty of the separate crime of test refusal, *to give more* incriminating evidence than the statute requires. *See* Minn.Stat. § 169.121, subd. 1a (1998) (providing "[i]t is a crime for any person to refuse to submit to a chemical test of the

person's blood, breath, or urine" for alcohol concentration).

Minnesota's implied consent law, which is civil and provides civil penalties, has been buttressed by the crime of test refusal, but still avoids all Fifth Amendment constitutional attacks on the grounds that it is forced self-incrimination by a theory that the Fifth Amendment does not attach to civil implied consent laws. *See Goldsworthy v. State, Dep't of Pub. Safety*, 268 N.W.2d 46, 49 (Minn.1978) (holding implied consent law is remedial in nature and intended to protect public safety); *Butler v. Commissioner of Pub. Safety*, 348 N.W.2d 827, 828 (Minn.App.1984) (holding Fifth Amendment does not attach to implied consent proceeding because it is civil in nature and not criminal).

But this case is a pure criminal case, a DWI conviction. What the state can do, so far, and avoid a constitutional attack on the grounds of compelled self-incrimination, is require the driver to give an adequate breath sample. Appellant and respondent here, and in all prior cases, agree that the driver is required to give an adequate breath sample. As the majority states:

> An Intoxilizer test is comprised of "one adequate breath sample analysis, one calibration standard analysis, and a second, adequate breath sample analysis." The legislature has provided that a test sample is deemed "adequate if the instrument analyzes the sample and does not indicate the sample is deficient."

Quoting Minn.Stat. § 169.123, subd. 2b(a), (b) (1998).

There is nothing in the statute that requires drivers to give more than an *adequate sample*. There is nothing in the statute that authorizes the state to collect more than an adequate sample. In fact, the statute only authorizes the collection of an adequate sample. Somehow we have used the circular reasoning of *Weierke* and *Brooks*. In *Weierke* this court noted, "The governing statute dictates a minimum quantity for a sample but does not suggest that the sample may not be larger than the minimum." *Weierke*, 578 N.W.2d at 816.

I strongly suggest that the Fifth Amendment prohibition against compelled self-incrimination in a criminal case dictates that once the minimum sample has been obtained, and the machine so tells the officer (see stipulated facts), the state has absolutely no right to force the defendant driver to continue to give more than the minimum, meaning more self-incriminating evidence. As in all criminal cases, penal statutes are construed strictly against the state and in favor of the defendant. *See State v. Olson*, 325 N.W.2d 13, 19 (Minn. 1982) (holding penal statutes are strictly construed with all reasonable doubts resolved in favor of defendant).

The taking of an adequate breath sample is in the nature of compelled discovery under the Rules of Criminal Procedure. *See* Minn. R.Crim. P. 9.02, subd. 2 (stating court may order discovery any time before trial). If the district court orders a defendant fingerprinted, but does not order the taking of a sample of the defendant's blood or hair, it would be impermissible for the state, after they obtain the authorized fingerprints, to insist that the defendant also give a blood and hair sample. The answer is simple. If the state wants that, they will have to go back to court for specific authorization. In this criminal case, the state has authorization only for a minimum adequate sample. They had that. The officer knew that because the machine indicated that to him, yet he deliberately and intentionally did not stop the test but went on to collect more incriminating evidence. We know the additional evidence was incriminating because the stipulated facts are that Rader's reported concentration continued to rise until he was told to stop blowing. We also have the stipulated fact that Rader's reported value could have been a legal under .10 at the time he had given all that the law requires, meaning an adequate sample.

A constant argument of the state in these cases, whether civil or criminal, is that the officers are instructed to keep the driver blowing after an adequate sample has been recorded because "then we are more likely to get deep lung air and deep lung air is more accurate."

There is no logic or due process to this argument. Of course, law enforcement would like every suspect being questioned to immediately give a complete statement and/or confession of everything they did. But "wants" do not translate into legal obligations. The state may "want" more breath after an adequate sample has been collected and registered, but they are not "entitled" to it under the law any more than police officers are entitled to keep defendants writing out confessions after a defendant has changed his mind and says he wants to discontinue his statement.

The Intoxilyzer 5000 could be programmed easily to turn off once an adequate sample has been collected, registered, and then print that reading out. Collection of any breath sample after the adequate sample has been given is compelled self-incrimination in violation of a citizen's Fifth Amendment right.

The majority talks about how Rader's test was prima facie reliable and that Rader failed to present any evidence that his test was unreliable. That is not the issue. A confession taken in violation of a defendant's rights, for instance the right to a *Miranda* warning if questioned while in custody, might be the most reliable confession ever written. It is just that it is inadmissible. To argue that an unconstitutional test is constitutional because it is "reliable" is a legal oxymoron. The majority states, "The state is required only to show that the directions of the legislature are followed." I agree with the majority that the legislation should be looked at. The legislation requires the driver to blow "an adequate sample." Nowhere does the legislation state that a driver is compelled to "blow more than an adequate sample." That makes sense. "More than an ade-

quate sample" is "void for vagueness" on its face. The phrase does not define "more." The legislation does define adequate sample. In a criminal case, that is all a driver can be compelled to give.

On issue three, the *Brady* issue, a defense raised in this case, and the defense in other cases, has never been addressed head on. It is always bypassed. The Intoxilyzer 5000 could easily be programmed to print out the BAC at the moment the machine registers an adequate sample. We know from the stipulated facts here, and the facts in other cases, that there is a likelihood that drivers have registered less than a .10 with their adequate sample, but have "made the grade," by continuing to blow for a few seconds longer because of the command of the testing officers to keep blowing until told to stop. A printout the moment the adequate sample is registered would be fair, and available evidence for both sides. If it were under .10, it would obviously be inculpatory. If it were more than .10, it could buttress the state's case. The testing officer can position himself, if he wants, to know what the reading is at the moment the machine signals an adequate sample. The driver does not have that option. He is not told the signal and is not told to stop blowing when either the tone is heard or figures appear on the machine indicating an adequate sample. Just the opposite, the driver is ordered to continue blowing until the testing officer tells him to stop.

The present system is akin to investigating officers not taking statements from witnesses to a crime whose preliminary indication of what they observed seems to favor the defendant. By not taking the statement, the state avoids the rigid *Brady* requirement that inculpatory evidence be turned over to the defense. The state only takes the statements of witnesses whose preliminary indication is that what they observed favors the state. Then, of course, the state is willing to disclose those to defendant and his counsel.

I do not want to digress into the *Brady* issue, other than to point out that it is valid. The main thrust of my concurrence is that in a criminal case like this one, there is a serious flaw in our existing legal reasoning that allows the state to compel self-incriminating evidence from a defendant driver, under penalty of the severe sanction of the crime of test refusal, when the compelled self-incrimination *exceeds the adequate sample set forth in the legislation.*