**STATE of Minnesota, Respondent,**

v.

**Wendy Ann BIRK, Appellant.**

No. A03–1903.

Court of Appeals of Minnesota.

Oct. 5, 2004.

Steven V. Grigsby, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Barry A. Sullivan, William G. Hawkins & Associates, Anoka, MN, for respondent.

Considered and decided by
PETERSON, Presiding Judge;
STONEBURNER, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

Appellant challenges her conviction of third-degree driving while impaired (DWI) (having an alcohol concentration of .10 or more within two hours of driving), arguing that (1) the evidence was insufficient to prove that the Intoxilyzer test was reliable and (2) she faced an unconstitutional presumption of guilt at trial based on the Intoxilyzer test result. We affirm.

## FACTS

At approximately 1:00 a.m. on May 13, 2003, Lino Lakes Police Officer Adam Halverson stopped appellant Wendy Birk for an improper lane change. Halverson noticed a strong odor of alcohol while speaking with Birk. He also observed that she had slurred speech and bloodshot, watery eyes. Halverson asked Birk to perform several field sobriety tests. Based on Birk's performance of the sobriety tests, Halverson believed that Birk was under the influence of alcohol and placed her under arrest for DWI.

Halverson read the implied consent advisory to Birk, who agreed to take a breath test. Halverson testified that the Intoxilyzer indicated that it was functioning properly and performing all the necessary calibrations to provide an accurate reading. At 1:42 a.m., Halverson administered the Intoxilyzer test, which produced an alcohol concentration reading of .14.

Birk was charged with third-degree DWI (driving under the influence of alcohol), in violation of Minn.Stat. §§ 169A.20, subd. 1(1), .27, subd. 1(a) (2002), and third-degree DWI (.10 or more within two hours of driving), in violation of Minn.Stat. §§ 169.20, subd. 1(5), .27, subd. 1(a) (2002). The case proceeded to trial, during which Birk moved for a judgment of acquittal. In support of the motion, Birk argued that the state failed to prove the reliability of the Intoxilyzer test and that the state failed to prove that her alcohol concentration was .10 or more within two hours of driving. The district court denied the motion. The jury found Birk guilty of the charged offenses. This appeal followed.

## ISSUES

I. Is the evidence sufficient to support the conviction of third-degree DWI (.10 or more within two hours of driving)?

II. Did the admission of the Intoxilyzer test result and the reading of the standard jury instruction defining the offense create an impermissible presumption of guilt?

## ANALYSIS

### I.

In considering a claim of insufficient evidence, our review is limited to a careful analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach a guilty verdict. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). In doing so, we

assume that the jury believed the evidence supporting the conviction and disbelieved any evidence to the contrary. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, reasonably could conclude that the defendant was guilty of the charged offenses. *State v. Alton,* 432 N.W.2d 754, 756 (Minn.1988).

█ An Intoxilyzer test consists of "one adequate breath sample analysis, one calibration standard analysis, and a second, adequate breath sample analysis." Minn.Stat. § 169A.51, subd. 5 (2002); *State v. Rader,* 597 N.W.2d 321, 323 (Minn.App. 1999). A test sample is "deemed adequate if the instrument analyzes the sample and does not indicate the sample is deficient." *Rader,* 597 N.W.2d at 323–24. Halverson testified that Birk gave two adequate breath samples and that the machine performed a calibration standard analysis between each sample. The Intoxilyzer printout corroborates Halverson's testimony. It shows that the machine tested the first breath sample and recorded a .14 reading; the machine then registered two calibration standard readings of .11. Next the Intoxilyzer tested a second breath sample from Birk, recording another reading of .14. Neither the test reading nor Halverson's testimony supports Birk's claim that the breath samples were deficient.

We, therefore, conclude that the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, reasonably could have found Birk guilty of testing .10 or more within two hours of driving and driving under the influence of alcohol.

## II.

█ At oral argument, Birk challenged the state's evidence of the reliability of the Intoxilyzer test result from a different perspective. Birk argued that the statutorily prescribed admission of the Intoxilyzer test result without supporting expert testimony, in conjunction with the standard jury instruction defining the offense, created an impermissible presumption of guilt.

The results of an Intoxilyzer test are admissible as a trustworthy and reliable measure of breath alcohol if a properly certified operator performs the test. Minn.Stat. § 634.16 (2002). Expert testimony that "an infrared ... breath-testing instrument provides a trustworthy and reliable measure of the alcohol in the breath" is not required for the test result to be admissible. *Id.* The applicable standard jury instruction, however, instructs the jury that it must "evaluate the reliability of *the testing method* and the test results." 10A *Minnesota Practice,* CRIMJIG 29.10 (1999) (emphasis added).

At trial, the state did not present expert testimony on the reliability of the infrared breath test method used by the Intoxilyzer machine in measuring the amount of alcohol in Birk's breath. Birk argues that, because expert testimony was not presented, the jury could have found that test method reliable only by presuming that a test used by police must be reliable. We note, however, that the Intoxilyzer correctly measured the room air sample at .000; that it measured Birk's two breath samples at nearly the same alcohol concentration (.146 and .147); and that the field sobriety tests and the officer's observation of Birk's indicia of intoxication generally tended to corroborate the test readings. Accordingly, there was circumstantial evidence tending to show that the infrared test method used by the Intoxilyzer was a reliable means of measuring breath alcohol.

Birk's argument that she faced an improper presumption of guilt at trial also is without merit. We have summarily rejected the argument that the DWI (over .10) statute impermissibly shifts the burden of proof. *See State v. Chirpich*, 392 N.W.2d 34, 37 (Minn.App.1986), *review denied* (Minn. Oct. 17, 1986). Although the *Chirpich* court reached this conclusion without a detailed explanation of its reasoning, an analysis of Birk's claim offers ample support for the holding.

■ A presumption ordinarily is presented to the jury through the jury instructions that direct the jury's consideration of the evidence. *See generally State v. Williams*, 324 N.W.2d 154, 160 (Minn. 1982) (holding that instruction that directs jury to find intent from basic facts without allowing it to weigh defense rebuttal evidence is unconstitutional). When deciding whether an irrebuttable presumption has been presented to the jury, the jury instructions generally are controlling. *County Court of Ulster County v. Allen*, 442 U.S. 140, 157 n. 16, 99 S.Ct. 2213, 2225 n. 16, 60 L.Ed.2d 777 (1979). The jury instruction in this case did not create a presumption. On the contrary, CRIMJIG 29.10 negates any suggestion that a presumption is created by the Intoxilyzer test.

■ CRIMJIG 29.10 tells the jury it must "evaluate the reliability of the test method and the test results" in determining whether the element of over .10 has been proven. 10A *Minnesota Practice*, CRIMJIG 29.10 (1999). This instruction discourages any notion that the jury may infer proof of the element solely from the Intoxilyzer test result. The jury is instructed to evaluate not only the reliability of the test result, but also the reliability of the test method, even though the reliability of a scientific test method generally is a question for the district court to determine in deciding the admissibility of the evidence. *See generally State v. Schwartz*, 447 N.W.2d 422, 424 (Minn.1989) (holding *Frye–Mack* test applicable to admissibility of DNA testing as a new scientific technique).

Birk requested a modified jury instruction that would have warned the jury against relying on the Intoxilyzer merely because it was used by police. That the defense requested modification of the jury instruction, however, does not imply that CRIMJIG 29.10, the instruction given, creates a presumption. Indeed, CRIMJIG 29.10 carefully avoids suggesting that any inference or presumption must be drawn from an Intoxilyzer reading of over .10.

Birk's complaint is not with CRIMJIG 29.10 itself, but rather with the statutory definition of the offense in light of the means used to prove the over-.10 element. The DWI statute defines the offense of DWI (over .10) in terms of alcohol concentration, which is provable by means of a scientific test. Birk does not argue that it is impermissible for a scientific test to prove an ultimate issue. *Cf.* Minn. R. Evid. 704 (providing that expert testimony is not objectionable because it "embraces an ultimate issue to be decided by the trier of fact"). Rather, she argues that expert testimony, in addition to the Intoxilyzer test, is required to establish proof beyond a reasonable doubt.

■ This argument fails, however, because the standard of proof beyond a reasonable doubt does not dictate any particular type of evidence. *See State v. Trimble*, 371 N.W.2d 921, 926 (Minn.App. 1985) (noting that proof beyond a reasonable doubt does not depend on quantity of evidence), *review denied* (Minn. Oct. 11, 1985). The standard does not define how much evidence the state must provide, only how convincing the evidence must be to the trier of fact. If it were otherwise, then

convictions could not rest, for example, on eyewitness identifications that were less than positive and certain. *See State v. Landa,* 642 N.W.2d 720, 725–26 (Minn. 2002). Thus, we hold that the standard of proof beyond a reasonable doubt by itself does not require the state to present expert testimony on the reliability of the test method used by the Intoxilyzer 5000.

When applied to the evidence here, CRIMJIG 29.10's requirement that the jury evaluate the reliability of the test result and the test method does not undermine this holding. Although CRIMJIG 29.10 directs the jury to evaluate the test *method,* it does not imply any particular kind of evidence must be presented on that issue. The jury had circumstantial evidence (the correct room-air reading, the consistent readings on separate breath samples, and the corroborating field sobriety tests and observations of intoxication) from which it could infer that the test *method,* as well as the test *result,* was reliable. Without expert testimony, of course, the jury was without evidence from which to assess the *theory* of infrared breath testing. But Birk has presented no authority requiring the jury, rather than the district court, to evaluate the admissibility of evidence developed under an emerging scientific theory.

We concede, as Birk argues, that there are cases in which the *admissibility* of the Intoxilyzer test has been confused with the *sufficiency* of the test to prove guilt beyond a reasonable doubt. And there has been some confusion between the sufficiency of the test to support a DWI conviction and its sufficiency to sustain a license revocation under the lower civil standard of proof. *See State v. Rader,* 597 N.W.2d 321, 323–24 (Minn.App.1999). Notwithstanding this confusion, however, Birk's argument that admitting the Intoxilyzer test without antecedent expert testimony

under Minn.Stat. § 634.16 creates an improper presumption of guilt is without merit.

### DECISION

The Intoxilyzer test provided sufficient evidence to prove that appellant's alcohol concentration was .10 or more within two hours of driving. The admission of that test, without antecedent expert testimony as to the test method, did not create an unconstitutional presumption of guilt despite the instruction in CRIMJIG 29.10 that the jury must evaluate both the reliability of the test method and the reliability of the test result.

**Affirmed.**