*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0546**

Brian Albert Patten, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed December 19, 2016
Affirmed
Stauber, Judge**

Dakota County District Court
File No. 19AV-CV-151560

Jeffrey S. Sheridan, Sheridan & Dulas, P.A., Eagan, Minnesota (for appellant)

Lori Swanson, Attorney General, Dominic J. Haik, Assistant Attorney General, St. Paul,
Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Stauber, Judge; and Bratvold,
Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from the district court's order sustaining the revocation of his driving
privileges for failing a breath test, appellant argues that the district court erred by refusing
to suppress evidence of the test because appellant's substantive due-process rights were
violated when appellant was required to provide a sample greater than that required by

law and that additional breath volume increased his alcohol concentration to above the legal limit.  We affirm.

## FACTS

In May 2015, appellant Brian Patten was arrested on suspicion of driving while intoxicated (DWI).  After being read the implied-consent advisory, appellant agreed to take a breath test, which indicated an alcohol concentration of 0.08.  Based on that result, respondent Commissioner of Public Safety revoked appellant's driving privileges.

Appellant sought judicial review of the revocation of his driving privileges, arguing inter alia that the results of his breath test should be suppressed because his "due process rights were violated when the officer in control of administering the breath test made [appellant] provide a sample greater than was required by law when the additional breath volume pushed [appellant's] alcohol concentration above 0.08."  At the implied-consent hearing, Officer Pete Meuwissen testified that he administered the breath test to appellant and that he is certified operator of the DataMaster DMT-G with fuel-cell option (DataMaster) breath-test machine.  Officer Meuwissen explained that once a breath sample has begun, the DataMaster emits a solid tone while a subject is providing a breath sample.  According to Officer Meuwissen, the solid tone emitted by the DataMaster stops when all of the machine's criteria have been satisfied and the DataMaster has accepted the subject's breath sample.  Officer Meuwissen further explained that the following criteria must be satisfied in order for a breath test to be accepted by the DataMaster: (1) the subject must blow at a rate of at least three liters per minute; (2) the subject must provide 1.5 liters of air; and (3) the slope of the sample must level out; once the subject's

blow-rate dips below three liters per minute, the test ends. Officer Meuwissen testified that if any of these criteria have not been satisfied, the DataMaster will not accept the breath sample.

Prior to administering appellant's breath test, the DataMaster performed diagnostic "self checks," and all tests were within acceptable ranges. According to Officer Meuwissen, he also told appellant that he would give him instructions as appellant was providing a sample, and that if appellant tried to manipulate the test, he would consider it a test refusal. Officer Meuwissen testified that once appellant started the test, he stood next to appellant and instructed him to "keep blowing, keep blowing, keep blowing." Officer Meuwissen stated that he continued these instructions throughout the test and that he stopped his instructions when the solid tone stopped. Officer Meuwissen further testified that appellant provided two samples, with the first sample registering a 0.091 alcohol concentration and the second sample registering a 0.087. The DataMaster then "takes off the third or the hundredth number" and "takes the smallest of the two samples."

On cross-examination, Officer Meuwissen admitted that a screen on the DataMaster depicted appellant's breath sample profile while the test was being administered. Officer Meuwissen also admitted that throughout the test, appellant's breath volume and alcohol concentration were visible on this screen. Although Officer Meuwissen admitted that he instructed appellant to continue blowing for about 20 seconds, the graphs depicted on the DataMaster showed that appellant had met the minimum volume requirement for a valid breath test within five seconds, and that "at the

3

[five] second mark, [appellant] was . . . well below a 0.08." But Officer Meuwissen stated that if he had told appellant "to stop blowing while the tone was solid," the DataMaster would have rejected the test result as "invalid." And Officer Meuwissen testified that he was not watching the screen on the DataMaster while the test was in progress, nor was he calculating appellant's breath-volume per second while the test was being administered.

The district court found that appellant "essentially argues that the officer should be able to do the math for the machine and tell [appellant] to stop blowing when the officer believes the machine's requirements are met." But the district court found that to "adopt [appellant's] argument would allow for an even greater chance of manipulation and unnecessarily places a burden on the officer to determine if certain criteria have been met when the machine can do it." The district court concluded that appellant "failed to provide any evidence beyond speculation to impeach the test result." Thus, the district court sustained the revocation of appellant's driver's license because appellant "failed to establish that the test results were inaccurate or that his due process rights were violated when the officer relied upon the machine to tell [appellant] when to stop providing a sample." This appeal followed.

## DECISION

This court reviews the district court's findings supporting an order sustaining a license revocation for clear error. *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002). "Findings of fact are clearly erroneous if, on the entire evidence, [the reviewing court is] left with the definite and firm conviction that a mistake occurred."

4

*State v. Diede*, 795 N.W.2d 836, 846-47 (Minn. 2011). But questions of law in implied-consent proceedings are reviewed de novo. *Harrison v. Comm'r of Pub. Safety*, 781 N.W.2d 918, 920 (Minn. App. 2010).

The doctrine of substantive due process is based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. amend. XIV, § 1. "Fundamental fairness is the quintessence of the due process clause." *Brooks v. Comm'r of Pub. Safety*, 584 N.W.2d 15, 18 (Minn. App. 1998) (quotation omitted), *review denied* (Minn. Nov. 24, 1998). It is the appellant's burden to show that the manner in which the DataMaster was administered was unfair. *Id.* at 19.

Appellant argues that his substantive due-process rights were violated when Officer Meuwissen "not only permitted, but ordered [appellant] to continue to blow well past what he could see was an adequate breath sample, and that additional breath pushed [his] alcohol concentration above 0.08." But this argument was rejected by this court almost 20 years ago. In *Brooks*, the drivers argued that their due-process rights were violated because the method of testing allowed suspected intoxicated drivers to be treated differently from each other—an officer administering the test might stop some subjects at the moment an adequate breath sample was obtained while requiring other subjects to continue blowing past that point. 584 N.W.2d at 19-20. This court held that the drivers failed to prove that the officers manipulated the tests. *Id.* at 20. The court held that there were no substantive or procedural due-process violations because the drivers "failed to show a direct and personal harm resulting from the alleged denial of constitutional rights." *Id.* at 19 (citation omitted).

Similarly, in *State v. Rader*, the defendant argued that the state violated his substantive and procedural due-process rights by requiring him to continue to blow into the intoxilyzer after the machine registered an adequate breath sample. 597 N.W.2d 321, 323 (Minn. App. 1999). Noting that this argument was "specifically rejected in *Brooks*," this court stated that the defendant "presented no evidence that the officer manipulated the test or that he purposefully treated [the defendant] differently than he treated others." *Id.* at 324. Thus, the court held that because the defendant failed to show any intended, direct, and personal harm from the alleged denial of his constitutional rights, neither his substantive nor procedural due-process rights were violated by the testing method used by the police officer. *Id.*

Appellant argues that *Brooks* and *Radar* are distinguishable because the testing machine in those cases was the Intoxilyzer 5000, but "Minnesota now uses a DataMaster breath testing machine." Appellant claims that the difference between machines is significant because, unlike the Intoxilyzer 5000, the DataMaster "allows the officer to watch in real time as a breath sample is introduced into the machine and see how much alcohol is in the sample." Appellant contends that because the officer was using the DataMaster, he "could see as [appellant's] alcohol concentration climbed toward the 'magic number' that would be the difference between a crime and not a crime," and that "[i]n the face of that information coming to him in real time, the officer had the choice of telling [appellant] when he had complied with the legal requirement and could stop blowing, or telling him to keep blowing well beyond that point." Thus, appellant argues that unlike in *Brooks* and *Rader*, Officer Meuwissen provided the court with evidence

that he "can and did manipulate the test by having [appellant] provide more than four times the required breath volume, and evidence that the manipulation actually made a difference in the outcome of the test where it is clear that [appellant's] level didn't cross the legal limit until late in the test."

We disagree. In *Rader*, this court stated that, consistent with *Brooks*, the "state is not required to prove that a defendant's alcohol concentration is indicated to be 0.10 or more at the *precise moment* the machine registers an adequate sample, the state is only required to show that the directions of the legislature are followed." 597 N.W.2d at 324. The legislature has directed that when a breath test is administered with a DataMaster breath-testing instrument, "the test must consist of analyses in the following sequence: one adequate breath-sample analysis, one control analysis, and a second, adequate breath sample analysis." Minn. Stat. § 169A.051, subd. 5(a) (2014); *see also* Minn. R. 7502.0425, subp. 2 (2015) (stating that the DataMaster DMT-G with fuel-cell option is approved by the commissioner for the purpose of determining the alcohol concentration of a breath sample). The legislature has also directed that a test sample is deemed "adequate if the instrument analyzes the sample and does not indicate the sample is deficient." Minn. Stat. § 169A.051, subd. 5(b) (2014). If these procedures are followed, the test result is deemed proper and reliable. *Brooks*, 584 N.W.2d at 17-18.

Here, the record reflects that the directives set forth by the legislature in Minn. Stat. § 169A.051, subd. 5, were followed. Because the state made a prima facia showing of the test's reliability, the burden shifted to appellant to introduce evidence of the test's unreliability. *See Rader*, 597 N.W.2d at 324. We acknowledge that there may be some

merit to appellant's claim that an increase in breath volume could cause the alcohol concentration to increase. But, as the district court found, appellant failed to provide any scientific evidence beyond speculation that a quantity of breath volume greater than the minimum adequate sample inaccurately reflects the actual alcohol concentration in the subject's body. Moreover, although Officer Meuwissen admitted that appellant's breath volume and alcohol concentration were visible on the DataMaster screen, he also testified that he was not watching the screen while the test was in progress, nor was he calculating appellant's breath volume per second while the test was being administered. Instead, Officer Meuwissen testified that he performed the breath tests consistent with his training, that the DataMaster informs the driver when to blow and when to stop blowing, and that if the test is not performed consistent with the specifications of the DataMaster, the machine gives "an invalid result." Appellant provided no evidence that the manner in which the test was administered to him was manipulated or any different than the manner in which the test was administered to others. Therefore, appellant has failed to establish that his substantive due-process rights were violated.

**Affirmed.**