**CITY OF SPRINGFIELD, Respondent,**

v.

**Arthur ANDERSON, Appellant.**

**No. C6-87-477.**

Court of Appeals of Minnesota.

Sept. 1, 1987.

Michael H. Boyle, Muske, Muske & Boyle, Springfield, for respondent.

William M. Schade, Somsen, Dempsey & Schade, New Ulm, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and LOMMEN *, JJ.

## OPINION

A. PAUL LOMMEN, Acting Judge.

Appellant Arthur Anderson was charged with driving a motor vehicle while under the influence of alcohol, in violation of Minn.Stat. § 169.121, subd. 1(a), and driving a motor vehicle with an alcohol concentration of 0.10 or more as measured within two hours of the time of driving, in violation of Minn.Stat. § 169.121, subd. 1(e). Following a jury trial, appellant was found guilty of violating Minn.Stat. § 169.121, subd. 1(e), but not guilty of violating Minn. Stat. § 169.121, subd. 1(a). Appellant's motion for a new trial was denied. On appeal, Anderson argues that the trial court abused its discretion by refusing to allow expert testimony regarding the proper procedure for collecting a urine sample.

## FACTS

At 1:47 a.m. on June 20, 1986, Officer Thooft of the Springfield Police Department observed appellant's vehicle cross the center line. When Thooft stopped the vehicle, he detected an odor of alcohol and saw appellant had bloodshot eyes and poor balance. After failing a preliminary screening test and doing poorly in several field sobriety tests, appellant was arrested.

Appellant was taken to the Springfield Police Department, read the Minnesota Implied Consent Advisory and agreed to pro-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

vide a urine sample. The urine sample was taken at 2:22 a.m. Thooft did not ask appellant to empty his bladder before taking the urine sample. Analysis by the Minnesota Bureau of Criminal Apprehension revealed an alcohol concentration of 0.15.

At trial, appellant called Dr. Clarence Stowe as an expert witness. During an offer of proof made outside the hearing of the jury, Dr. Stowe offered testimony that in order to insure accurate test results, the bladder must be emptied immediately prior to collecting the urine sample. In the offer of proof, Dr. Stowe specifically stated he would not question the validity of the sample.

Because the validity of the urine sample was not being challenged, the trial court found Dr. Stowe's proposed testimony irrelevant and refused to allow him to testify. The jury found appellant guilty of violating Minn.Stat. § 169.121, subd. 1(e), but not guilty of violating Minn.Stat. § 169.121, subd. 1(a).

### ISSUE

Did the trial court abuse its discretion by refusing to allow expert testimony regarding the proper procedure for collecting a urine sample when the validity of the sample was not being challenged?

### ANALYSIS

Appellant was found guilty of violating Minn.Stat. § 169.121, subd. 1(e), driving a motor vehicle with an alcohol concentration of 0.10 or more as measured within two hours of the time of driving. Based on a gas chromatography analysis, appellant's urine sample revealed an alcohol concentration of 0.15. Appellant contends that the trial court abused its discretion by not allowing expert testimony regarding the proper procedure for collecting a urine sample.

It is well settled that the exclusion of evidence for lack of foundation rests with the sound discretion of the trial court and will not be disturbed unless justice requires. *Bisbee v. Ruppert*, 306 Minn. 39, 44, 235 N.W.2d 364, 368 (1975). It is equal-

ly well settled that admissibility of chemical test results depends upon "prima facie proof of the trustworthiness of the test's administration." *State v. Dille*, 258 N.W.2d 565, 568 (Minn.1977). The proponent of a test must establish the test is reliable and its administration in the particular instance conformed to the procedure necessary to insure reliability. *Id.* at 567.

During an offer of proof made outside the jury's hearing, Dr. Stowe stated the proper procedure for analyzing a urine sample is to first empty the bladder and then to take a second sample as soon as possible. Unless that procedure was followed, Dr. Stowe stated the urine provided represented an average alcohol concentration of the urine in appellant's bladder since the last time appellant urinated and was not representative of the alcohol concentration in appellant's body at the time of testing. Dr. Stowe also stated the testing procedure used by the Bureau of Criminal Apprehension was proper. Finding that Dr. Stowe's testimony was irrelevant, the trial court refused to allow him to testify.

Minn.Stat. § 169.121, subd. 1(e) (1986), provides:

> **Crime.** It is a misdemeanor for any person to drive, operate or be in physical control of any motor vehicle within this state or upon the ice of any boundary water of this state:
>
> \* \* \* \* \* \*
>
> (e) when the person's alcohol concentration as measured within two hours of the time of driving is 0.10 or more.

"Alcoholic concentration," as defined by Minn.Stat. § 169.01, subd. 61, is as follows:

> (a) the number of grams of alcohol per 100 milliliters of blood, or
>
> (b) the number of grams of alcohol per 210 liters of breath, or
>
> (c) the number of grams of alcohol per 67 milliliters of urine.

The statute does not set forth the procedure to be used when collecting urine samples.

Adoption of appellant's position would present several problems. Assume, for ex-

ample, that appellant empties his bladder prior to the collecting of urine sample and then is unable to urinate again during the two hour time limit proscribed by Minn. Stat. § 169.121, subd. 1(e). Would the prosecutor then be precluded from bringing an action against appellant under subd. 1(e)? Or, assume that appellant simply refuses to urinate a second time. Would appellant then be subject to revocation of his driver's license for refusal to provide a test sample?

Dr. Stowe agreed that appellant's urine sample was valid. As a result, we find that the trial court did not abuse its discretion by refusing to allow irrelevant expert testimony.

### DECISION

The trial court did not abuse its discretion by refusing to allow expert testimony regarding the proper procedure for collecting a urine sample when the validity of the sample was not being questioned.

Affirmed.