Jason Robert GENUNG, petitioner,
Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C7–98–1553.

Court of Appeals of Minnesota.

March 2, 1999.

Charles A. Ramsay, Ramsay Law Firm, Ltd., Roseville, MN (for appellant).

Michael A. Hatch, Attorney General, Peter R. Marker, Assistant Attorney General, St. Paul, MN (for respondent).

Considered and decided by DAVIES, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## OPINION

DAVIES, Judge.

Appellant challenges a district court order sustaining the revocation of his driver's license under the implied consent statute, Minn.Stat. § 169.123 (1998). He contends that the urine test administered to him was inaccurate, even though he was tested in accordance with Bureau of Criminal Apprehension (BCA) procedures. We affirm.

## FACTS

Appellant Jason Robert Genung was arrested for DWI on March 22, 1998. The arresting officer offered him a choice of either a blood or a urine test to measure his alcohol concentration; appellant chose the urine test. At first, appellant could not provide a sample. He then drank approximately eight glasses of water and produced a sample about 15 minutes later. The sample was taken using a BCA kit and accompanying instructions, and was sent to the BCA for

analysis. The sample revealed an alcohol concentration of .11 and, as a result, the Commissioner of Public Safety revoked appellant's driver's license.

Appellant petitioned for judicial review of the revocation. At the hearing, his forensic expert testified that the method used to collect the urine was not a "scientifically valid test method" because appellant had not been required to void his bladder once and wait approximately 20 to 30 minutes before producing the test sample. The expert stated that failure to void once before producing the sample created a "pooled sample," which measured the average alcohol concentration since the last time he urinated, rather than the alcohol concentration at the time of the test.[1] The trial court concluded that the test was "properly administered and accurately and reliably analyzed petitioner's alcohol concentration."

### ISSUE

Did the trial court err in its conclusion that the urine test result was accurate?

### ANALYSIS

The party offering the results of a chemical or scientific test into evidence has the burden of establishing a prima facie case that the test is reliable and that its administration "conformed to the procedure necessary to ensure reliability." *State v. Dille*, 258 N.W.2d 565, 567 (Minn.1977) (citations omitted). The burden of production then shifts to the party opposing admission to show why the test is untrustworthy. *Id.* at 568. The burden of persuasion regarding the accuracy of the result remains with the proponent of the evidence. *Id.* at 569 n. 2. Burden-of-proof determinations are reviewed independently, on the basis of the facts found, omitting any factual findings that are clearly erroneous. *State v. Kulseth*, 333 N.W.2d 635, 637 (Minn.1983).

Appellant asserts that the court erred in determining that the commissioner met his burden of persuasion with regard to the accuracy of the result.[2] But the evidence amply supports the trial court's determination that the test was administered properly and that it reported appellant's alcohol concentration with sufficient accuracy. The officer who collected the sample abided by the applicable BCA procedures. Those procedures, which do not require voiding once before producing the test sample, have been found to ensure reliability. *See* Minn. R. 7502.0700 (1997) ("urine samples must be tested for alcohol using only procedures approved and certified to be valid and reliable testing procedures by the director [of the BCA]").

On appeal, appellant also argues for the first time that due process requires that the "most accurate testing method be used in administering a test," relying on *Brooks v. Commissioner of Pub. Safety*, 584 N.W.2d 15 (Minn.App.1998), *review denied* (Minn. Nov. 24, 1998). To argue a different theory on appeal typically precludes review. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (issue raised below but argued under new theory on appeal generally not reviewable). We may, however, review any matter "as the interest of justice may require." Minn. R. Civ.App. P. 103.04. We find it in the interest of justice to address appellant's misreading of *Brooks*.

In *Brooks*, the issue was whether due process prohibited requiring appellants to give a greater breath sample than what the machine indicated was an "adequate sample" to determine alcohol concentration. 584 N.W.2d at 17. The court did note, as appellant states, that "the most accurate reading comes from the deep-lung air," and there was no showing that the "first zero sample * * * measured the * * * deep-lung air sought." *Id.* at 18. In the same paragraph, however, this court concluded that it must defer to the

---

1. On cross-examination, the expert admitted that he had not known that appellant could not at first provide a sample and that this fact might change his analysis. But our decision is not based on this fact.

2. Appellant concedes in his reply brief that because he failed to object at trial he cannot appeal the admission of the test result. *See State v. Eli*, 402 N.W.2d 627, 630 (Minn.App.1987) (failure to make foundational objection when blood-test result introduced precluded review of admissibility on appeal).

legislature and the commissioner as to the appropriate procedures to use to reach test results on which to base a revocation. *Id.* Appellant paraphrases the case as "allow[ing] the testing procedure to go beyond the purview of the statute to achieve the most accurate result," when in part the case stands for the opposite proposition—a breath test need not be scientifically perfect, but is sufficiently accurate for revoking a license if the procedures promulgated by the commissioner have been followed.

## D E C I S I O N

The district court appropriately sustained the commissioner's revocation of appellant's driver's license.

**Affirmed.**