**In re the Marriage of Teri Joan REED, petitioner, Respondent,**

v.

**Alaa Esam ALBAAJ, Appellant.**

No. A05–1858.

Court of Appeals of Minnesota.

Oct. 24, 2006.

Anne M. Hoefgen, Legal Services of Northwest Minnesota, Moorhead, MN, for respondent.

Alaa Esam Albaaj, East Grand Forks, MN, pro se appellant.

Considered and decided by WILLIS, Presiding Judge; TOUSSAINT, Chief Judge; and DIETZEN, Judge.

## OPINION

WILLIS, Judge.

On appeal from a Minnesota dissolution judgment, pro se appellant-father, a member of the armed forces incarcerated in a Kansas military prison, argues that the district court (1) erred by determining that appellant is not entitled to the protection of sections 521, 522, and 525 of the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. app. §§ 501–596 (Supp. III 2003); (2) lacked jurisdiction to enter a judgment against appellant; (3) prematurely dissolved appellant's marriage to respondent-mother when appellant lacked counsel in Minnesota; and (4) abused its discretion by awarding respondent custody, by inequitably dividing the marital property, and by failing to appoint a guardian ad litem.

We affirm in part because we conclude that appellant is not in military service for purposes of the SCRA; that appellant waived his defense of lack of personal jurisdiction; that appellant has no statutory or constitutional right to counsel during a dissolution hearing; that the district court did not abuse its discretion by failing to appoint a guardian ad litem; and that the district court did not abuse its discretion by awarding respondent sole physical custody of the parties' children.

But we remand for further findings because the district court failed to make sufficient best-interests findings to support its award of sole legal custody to respon-

dent. And we reverse in part because the district court awarded appellant's nonmarital property to respondent without making the findings necessary to support such an award.

## FACTS

Appellant Alaa Esam Albaaj challenges the district-court order dissolving his marriage to respondent Teri Joan Reed, granting Reed sole physical and legal custody of the parties' two children, and dividing the parties' marital property. At the time of the dissolution proceeding, Albaaj was a member of the United States armed forces and was incarcerated in a military prison in Fort Leavenworth, Kansas, for crimes that he committed during his military service.[1]

In May 2004, Reed and the parties' two children moved to Minnesota from Colorado, where they had lived with Albaaj before his confinement. Reed served Albaaj with a summons and a petition for dissolution of marriage in January 2005. Albaaj moved for an "extension" and asked for any applicable relief under the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. app. §§ 501–596 (Supp. III 2003). The district court denied Albaaj's motion, concluding that Albaaj was not protected by the SCRA because he was not in military service while incarcerated. Albaaj did not file an answer to Reed's petition until a few days before the final dissolution hearing in June 2005.

Although Albaaj was technically in default, the district court allowed him to participate by telephone at the final dissolution hearing. But it appears from the record that Albaaj hung up the phone before any testimony was taken, and the hearing proceeded without him.

The district court granted Reed's petition for dissolution, awarded her sole legal and sole physical custody of the two children, and divided the parties' marital property. This appeal follows.

## ISSUES

I. Was Albaaj in military service while he was incarcerated and therefore entitled to protection under the Servicemembers Civil Relief Act in the marriage-dissolution proceeding?

II. Did the district court have personal jurisdiction over Albaaj and subject-matter jurisdiction to dissolve Albaaj and Reed's marriage, to determine custody of the parties' children, and to divide the parties' property?

III. Was Albaaj denied due process because he was not represented by counsel during the marriage-dissolution proceeding?

IV. Did the district court abuse its discretion by granting sole legal and sole physical custody to Reed, by its division of the parties' property, and by failing to appoint a guardian ad litem?

## ANALYSIS

### I. Applicability of the SCRA

■ Albaaj argues that the district court erred by determining that he is not entitled to the protection of sections 521, 522, and 525 of the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. app. §§ 501–596 (Supp. III 2003).[2] "The appli-

---

1. Albaaj was serving a ten-year sentence, which he received after a military trial in February 2000.

2. The SCRA was formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940.

50 U.S.C. app. § 501 (2000); see e.g., Boone v. Lightner, 319 U.S. 561, 564, 63 S.Ct. 1223, 1226, 87 L.Ed. 1587 (1943).

cability of a statute is an issue of statutory interpretation, which appellate courts review de novo." *In re Matter of Ramirez v. Ramirez,* 630 N.W.2d 463, 465 (Minn.App.2001). The SCRA protects servicemembers by providing for the "temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C. app. § 502(2). The purpose of this protection is to enable servicemembers "to devote their entire energy to the defense needs of the Nation." 50 U.S.C. app. § 502(1). The SCRA is to be "liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone,* 319 U.S. at 575, 63 S.Ct. at 1231.

After Albaaj received service of the summons and petition for dissolution of marriage, he moved the district court for an "extension" and asked for any "appropriate" relief under the SCRA. The district court denied his motion, determining that Albaaj was not entitled to protection under the SCRA.

Section 522 of the SCRA provides:

At any stage before final judgment in a civil action or proceeding in which a servicemember described in subsection (a) is a party, the court may on its own motion and shall, upon application by the servicemember, stay the action for a period of not less than 90 days, if the conditions in paragraph (2) are met.

50 U.S.C. app. § 522(b)(1). Section 522 applies to

any civil action or proceeding in which the defendant at the time of filing an application under this section ... is in military service or is within 90 days after termination of or release from mili-

tary service ... and has received notice of the action or proceeding.

50 U.S.C. app. § 522(a).

The district court concluded that Albaaj was not entitled to protection under the SCRA because a person is not in military service when he is incarcerated in a military prison. Albaaj relies on *Wilson v. Courter,* 46 M.J. 745 (A.F.Ct.Crim.App. 1997), to argue that his incarceration does not affect his military-service status. But *Wilson* does not address the issue of a person's military-service status as it relates to application of the SCRA. *Id.*

For the purposes of the SCRA, the term "military service" means

in the case of a servicemember who is a member of the Army, ... active duty, as defined in section 101(d)(1) of title 10, United States Code ... and any period during which a servicemember is absent from duty on account of sickness, wounds, leave, or other lawful cause.

50 U.S.C. app. § 511(2). The term "active duty" means "full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned." 10 U.S.C. 101(d)(1) (2000).

This is a matter of first impression in Minnesota, but courts in other jurisdictions have concluded that the SCRA does not protect servicemembers who are incarcerated in military prison or who are AWOL because such servicemembers are not on active duty and are not absent from duty on account of a lawful cause. *See, e.g., United States v. Hampshire,* 95 F.3d 999, 1005 (10th Cir.1996); *Mantz v. Mantz,* 69 N.E.2d 637, 639 (Ohio Ct.Com.Pl.1946) (stating that the SCRA does not protect "those who through their voluntary aggressions and conduct remove themselves

from the role of [servicemembers] in active service or duty"); *Means v. Means*, 45 Pa. D. & C.2d 228, 231 (Pa.Ct.Com.Pl.1968) (asking, "Can it be said in logic or reason that to permit [an AWOL servicemember's] wife to proceed with her divorce action prevents him from devoting his full energy to the defense needs of the Nation, or can it say that he has absented himself for any lawful cause?") (quotations and footnote omitted). Because Albaaj was incarcerated in military prison for crimes that he committed while on active duty, we conclude that he was not on active duty at the time of the dissolution proceeding and was, therefore, not entitled to benefit from the protections of the SCRA.

Albaaj suggests that a state district court lacks the authority to interpret the SCRA, a federal statute. But section 522 applies to "any civil action or proceeding." 50 U.S.C. app. § 522(a). A state district court must be authorized to interpret the SCRA in order to benefit persons in military service who are parties to actions in state court.

Albaaj also suggests that the district court did not make sufficient findings of fact to determine whether the SCRA applied to Albaaj. But the relevant fact here is that Albaaj was in military prison for crimes that he committed during his military service. The district court's finding that Albaaj was incarcerated at the United States Disciplinary Barracks in Fort Leavenworth, Kansas, is sufficient.

 Albaaj also argues that the district court's decision "violate[d] the Equal Protection provisions of the Due Process Clause of the Fifth Amendment" because it created "a class of service members who are unable to use the protections" of the SCRA. He asserts that "other than his confinement, there is no legitimate basis on which to differentiate [Albaaj] from non-confined active duty personnel." Al-

baaj did not raise this argument before the district court.

 This court generally will not consider issues that were not raised before the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). But it may review any matter "as the interest of justice may require." *Genung v. Comm'r of Pub. Safety*, 589 N.W.2d 311, 313 (Minn. App.1999) (quoting Minn. R. Civ.App. P. 103.04), *review denied* (Minn. May 18, 1999). An equal-protection analysis begins with the mandate that similarly situated individuals shall be treated alike. *Doll v. Barnell*, 693 N.W.2d 455, 462 (Minn.App. 2005), *review denied* (Minn. June 14, 2005). A servicemember who is serving time confined in a military prison for crimes committed while in military service is not situated similarly to servicemembers not so confined. Therefore, Albaaj's confinement alone is a legitimate basis to treat him differently from non-confined servicemembers. Because he fails to show that he is being treated differently from similarly situated servicemembers, his equal-protection argument fails.

## II. Jurisdiction

 Albaaj argues that the district court lacked personal jurisdiction over him and lacked subject-matter jurisdiction to dissolve the marriage, award custody, and divide the parties' property. This court reviews de novo legal issues concerning jurisdiction. *McLain v. McLain*, 569 N.W.2d 219, 222 (Minn.App.1997), *review denied* (Minn. Nov. 18, 1997).

 Due process requires that personal jurisdiction be exercised only when the defendant has sufficient minimum contacts with the forum state. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 570 (Minn.2004) (citing *Burnham v. Superior Court of Cal.*, 495 U.S.

604, 618, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990)). But lack of personal jurisdiction is a defense that may be waived. *Mesenbourg v. Mesenbourg,* 538 N.W.2d 489, 492–93 (Minn.App.1995) (finding that the appellant waived his right to challenge personal jurisdiction when he failed to do so in the district court). Simple participation in litigation does not waive a jurisdictional defense. *Patterson v. Wu Family Corp.,* 608 N.W.2d 863, 868 (Minn.2000). But a defendant's failure to provide the district court with an opportunity to determine the validity of a jurisdictional defense is a waiver of that defense. *Id.* Because Albaaj failed to challenge the district court's personal jurisdiction over him until this appeal, he waived this defense.

■ Because the district court properly exercised personal jurisdiction over Albaaj, it also had subject-matter jurisdiction to render judgment on child custody, to dissolve the marriage, and to divide the parties' marital property. According to the Uniform Child Custody Jurisdiction and Enforcement Act, Minn.Stat. §§ 518D.101–.317 (2004), a Minnesota court has jurisdiction to make an initial child-custody determination if Minnesota is the home state of the child on the date of the commencement of the proceeding. Minn.Stat. § 518D.201(a)(1). "Home state" means the "state in which a child lived with a parent ... for at least six consecutive months immediately before the commencement of a child custody proceeding." Minn.Stat. § 518D.102(h).

Here, Reed testified that she and her children moved to Minnesota in May 2004. A dissolution proceeding is commenced by personal service of the summons and petition. Minn.Stat. § 518.09 (2004). Albaaj was personally served with the summons and petition on January 25, 2005. Because Reed and her children had lived in Minnesota for nearly seven months before the commencement of the divorce and custody proceeding, the district court had subject-matter jurisdiction to make a custody determination.

A district court may grant a marriage dissolution if one of the parties has resided in Minnesota for at least 180 days immediately preceding the commencement of the dissolution proceeding. Minn.Stat. § 518.07 (2004). Because Reed had resided in Minnesota for more than 180 days before the commencement of the dissolution proceeding, the district court had authority to grant a dissolution of her marriage to Albaaj.

"Upon a dissolution of marriage ... the court shall make a just and equitable division of the marital property of the parties...." Minn.Stat. § 518.58, subd. 1 (2004). Because Albaaj waived his personal-jurisdiction defense to the dissolution proceeding, we conclude that the district court had subject-matter jurisdiction to divide the parties' marital property.

### III. Right to Representation

■ Albaaj argues that he was not provided with a meaningful hearing, that his marriage was "prematurely" dissolved, and that he was unlawfully deprived of property because he was not represented during the dissolution proceeding. There is no statutory or constitutional right to counsel in a dissolution proceeding. *State ex rel. Ondracek v. Blohm,* 363 N.W.2d 113, 115 (Minn.App.1985). Therefore, Albaaj's rights were not violated by his lack of representation during the dissolution proceeding. Further, Albaaj was served in accordance with the rules of civil procedure. He was given an opportunity to appear by telephone at the dissolution hearing, even though he failed to timely file an answer to the petition for dissolution. We conclude that Albaaj's due-pro-

cess rights were satisfied during the dissolution proceeding.

## IV. Conclusions of the District Court

Albaaj also challenges the district court's award of sole legal and sole physical custody to Reed; the court's division of marital property; and the court's failure to appoint a guardian ad litem, as requested by Albaaj.

### Child Custody

Albaaj asked the district court to award joint legal and joint physical custody of the parties' two children. Appellate review of a district court's custody determination is limited to whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Silbaugh v. Silbaugh*, 543 N.W.2d 639, 641 (Minn.1996). The district court must consider the children's best interests in making a custody determination; it must make detailed findings on each of the best-interests factors listed in section 518.17, subdivision 1, and explain how application of these factors led to its conclusions and to its determination of the best interests of the children. Minn.Stat. § 518.17, subd. 1(a) (2004).

The district court's dissolution order does not explicitly address the children's best interests. But at the dissolution hearing, the district court stated its reasons for granting Reed sole legal and sole physical custody of the children: (1) Albaaj was currently incarcerated; (2) Albaaj was apparently incarcerated for a crime of violence against a third party; and (3) Albaaj has ties to another country and could flee the United States.

We note that the district court's finding that Albaaj was incarcerated for a crime of violence against a third party is not supported by the record. Reed testified that Albaaj was incarcerated for "a variety of misconduct," including "a sexual act with someone other than his wife, intimidating a witness, and failure to observe a direct order." *See* Minn.Stat. § 624.712, subd. 5 (2004) (defining "crime of violence"). And the record does not show any other bases for Albaaj's incarceration.

Because Albaaj was incarcerated at the time of the hearing, it was impossible for him to have joint physical custody of his children. But incarceration does not necessarily preclude the incarcerated parent from being a child's legal custodian. *See Naylor v. Kindred*, 250 Ill.App.3d 997, 189 Ill.Dec. 552, 620 N.E.2d 520, 528 (1993).

The fact that Albaaj has ties to another country also does not preclude him from having joint legal custody of his children. Legal custody confers "the right to determine the child's upbringing, including education, health care, and religious training." Minn.Stat. § 518.003, subd. 3(a) (2004). When parents share joint legal custody, they have "equal rights and responsibilities, including the right to participate in major decisions determining the child's upbringing." *Id.*, subd. 3(b) (2004). A parent's ties to another country, especially when there is no evidence that the parent plans to leave this country, do not necessarily affect the parent's ability to cooperate in making such decisions for his or her child.

The findings made by the district court, without more, do not justify an award of sole legal custody to Reed. Because the district court's order does not reflect its consideration of the best-interests factors required to award Reed sole legal custody, we remand for further findings.

### Property Division

A district court has broad discretion regarding the division of property

in marriage-dissolution cases. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984). The district court's conclusion must be against logic and the facts on the record for this court to find that the district court abused its discretion. *Id.* And we will uphold the district court's determinations unless they are clearly erroneous. *Id.*

Upon a dissolution of marriage, the district court shall "make a just and equitable division of the marital property of the parties . . . after making findings regarding the division of the property." Minn.Stat. § 518.58, subd. 1 (2004). Here, the district court awarded the parties "all right, title, interest and equity in and to the items of personal property currently in their own possession." We note that Albaaj was incarcerated at the time of the dissolution and likely had few items of personal property in his possession, but we do not find that the district court abused its discretion on this issue. A district court may "award to either spouse the household goods and furniture of the parties, whether or not acquired during the marriage." Minn. Stat. § 518.58, subd. 1. Nor do we find that the district court abused its discretion by awarding each spouse one car and his or her personal bank account, or by assigning to Reed the parties' joint credit-card debt, car-loan debt, and dental-services debt, as well as her student-loan debt.

But we find that the district court abused its discretion by finding that the parties "share a joint interest in real estate" located at 4275 Solar Face Court, Colorado Springs, Colorado, and awarding Reed $7,500 for her share of that interest.

The district court found that the equity in the property was $30,000. Reed testified that Albaaj and his brother bought this property for their parents one year before she and Albaaj were married. Reed testified that she estimates that the house was worth $170,000 when Albaaj

purchased it and was worth $200,000 on the date of the hearing. Reed was awarded one-half of Albaaj's estimated equity in the property.

"Marital property" generally includes all property acquired by either party during the marriage. Minn.Stat. § 518.54, subd. 5 (2004). "Nonmarital property" includes property acquired by either spouse before the marriage. *Id.* Because Albaaj purchased this property before his marriage to Reed, his interest in the property is nonmarital.

When the value of nonmarital property increases because of the efforts of one or both spouses during the marriage, the increase in value is marital property. *Nardini v. Nardini,* 414 N.W.2d 184, 192 (Minn.1987). But when the increase in value of nonmarital property is attributable to inflation or market forces or conditions, the increase in value is nonmarital property. *Id.* Reed's testimony does not indicate that the increase in the property's value was a result of either Albaaj's or her efforts. Therefore, according to the record before us, we must conclude that the increase in the property's value is nonmarital and that the district court's determination that Reed and Albaaj share a joint interest in the property is not supported by the record.

A district court may award one spouse's nonmarital property to the other spouse if it finds that the receiving spouse's "portion of the marital property . . . [is] so inadequate as to work an unfair hardship, considering all relevant circumstances." Minn.Stat. § 518.58, subd. 2. If the district court "apportions property other than marital property, it shall make findings in support of the apportionment." *Id.* Here, the district court did not make findings supporting an award of nonmarital property to Reed. Therefore, we con-

clude that the district court abused its discretion by awarding Reed $7,500 "for her share" of the property located at 4275 Solar Face Court.

### Guardian Ad Litem

■ Albaaj also challenges the district court's failure to appoint a guardian ad litem to help determine the children's best interests. A district court may appoint a guardian ad litem in dissolution proceedings if custody is an issue. Minn.Stat. § 518.165, subd. 1 (2004). A district court is required to appoint a guardian ad litem in a marriage-dissolution proceeding only when the court has reason to believe that the child is a victim of domestic child abuse or neglect. *Id.*, subd. 2 (2004). Here, there was no allegation that the children were victims of domestic child abuse or neglect. Albaaj provides no reason for this court to conclude that the district court abused its discretion by failing to appoint a guardian ad litem, and we find no abuse of discretion.

### DECISION

Because Albaaj is not in military service for the purposes of the SCRA, the district court did not err by concluding that Albaaj was not entitled to the protection of the SCRA. Because Albaaj waived his defense of lack of personal jurisdiction, the district court had jurisdiction to dissolve Albaaj and Reed's marriage, to divide marital property, and to make a custody determination. Because Albaaj has no statutory or constitutional right to counsel during a dissolution hearing and because he was served in accordance with the rules of civil procedure, he was not denied a fair hearing. The district court did not abuse its discretion by failing to appoint a guardian ad litem. And because Albaaj was incarcerated and unable to physically care for his children, the district court did not abuse its discretion by awarding respondent sole physical custody. Therefore, we affirm in part.

But because the district court failed to make sufficient best-interests findings to support its award of sole legal custody to Reed, we remand for further findings. And because the district court awarded Reed Albaaj's nonmarital property without making necessary findings to support an award of nonmarital property to Reed, we reverse in part.

**Affirmed in part, reversed in part, and remanded.**