Robert Laron **HAYES**, petitioner,
Appellant,

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

No. A08–1884.

Court of Appeals of Minnesota.

Oct. 6, 2009.

Patricia A. Zenner, Stillwater, MN, for appellant.

Lori Swanson, Attorney General, Emerald Gratz, Assistant Attorney General, St. Paul, MN. for respondent.

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Considered and decided by HALBROOKS, Presiding Judge; JOHNSON, Judge; and HARTEN, Judge.\*

## OPINION

JOHNSON, Judge.

The commissioner of public safety revoked the driver's license of Robert Laron Hayes after he was arrested for driving while impaired (DWI) and submitted to a urine test, which revealed an alcohol concentration of .13. At the implied-consent hearing, the district court did not allow Hayes to introduce expert testimony concerning his urine test. The district court also rejected Hayes's argument that the administration of the urine test violated his constitutional right to equal protection. We conclude that the district court did not abuse its discretion by excluding the proffered expert testimony and did not err by rejecting Hayes's equal protection argument and, therefore, affirm.

## FACTS

On April 13, 2008, Hayes was arrested by state trooper Kevin Kloss on suspicion of DWI. After Hayes failed field sobriety tests, Trooper Kloss read him the implied-consent advisory and transported him to the Dakota County jail. Trooper Kloss requested that Hayes submit to a urine test, and Hayes provided a urine sample. The test revealed an alcohol concentration of .13. As a consequence, the commissioner of public safety revoked Hayes's driver's license.

Hayes petitioned the district court to rescind the revocation of his license. Before the implied-consent hearing, Hayes gave notice of his intent to offer the expert

Minn. Const. art. VI, § 10.

testimony of Thomas Burr. Hayes's notice stated that Burr was prepared to testify that the trooper did not obtain a urine sample that would permit a proper measurement of Hayes's alcohol concentration at the time of the test because Hayes provided a urine sample without having previously voided his bladder. Burr proposed to testify that, as the result of "urine pooling," the urine sample obtained from Hayes allowed for measurement of Hayes's average alcohol concentration since he last urinated but not his alcohol concentration at the time the urine sample was obtained. Burr intended to testify that a proper measurement of Hayes's alcohol concentration could be obtained only if Hayes had first emptied his bladder, then waited for his bladder to fill again, and then provided a sample.

The commissioner filed a pre-hearing motion in limine to exclude Burr's testimony on the ground that the urine-pooling theory has not been endorsed by the appellate courts. The district court granted the commissioner's motion and excluded Hayes's proffered expert testimony, although the district court received into evidence a 21–page academic article that appears to provide the scientific basis of Burr's proffered testimony.

During the hearing, Hayes also argued that the revocation of his driver's license violated his constitutional right to equal protection because, unlike breath tests and blood tests administered to other drivers, his urine test did not measure his alcohol concentration at the time he provided the urine sample. The district court rejected Hayes's equal protection argument, reasoning that the chemical-test provisions of the implied-consent statute are "rationally related to the legitimate governmental interest in insuring public safety."

The district court sustained the revocation of Hayes's driving privileges. Hayes appeals.

## ISSUES

I.   Did the district court err by excluding Hayes's proffered expert testimony concerning his urine test?

II.   Did the administration of Hayes's urine test violate his constitutional right to equal protection?

## ANALYSIS

### I.

Hayes first argues that the district court erred by refusing to admit expert testimony supporting his argument that a urine test does not properly measure a person's alcohol concentration if the person has not voided his or her bladder between the time of being arrested and the time of providing a urine sample.

A district court may admit expert testimony if the expert's specialized knowledge will assist the factfinder "to understand the evidence or to determine a fact in issue." Minn. R. Evid. 702. "The basic consideration in admitting expert testimony under Rule 702 is the helpfulness test—that is, whether the testimony will assist the [factfinder] in resolving factual questions presented." *State v. Grecinger,* 569 N.W.2d 189, 195 (Minn.1997).

> If the subject of the testimony is within the knowledge and experience of a [factfinder] and the testimony of the expert will not add precision or depth to the [factfinder's] ability to reach conclusions about that subject which is within their experience, then the testimony does not meet the helpfulness test.

*State v. Helterbridle,* 301 N.W.2d 545, 547 (Minn.1980). We apply an abuse-of-discretion standard of review to a district court's

ruling on the admissibility of expert testimony. *State v. Bird*, 734 N.W.2d 664, 672 (Minn.2007). "Even if evidence has probative value, it is still within the district court's discretion to exclude the testimony" because it is "a very deferential standard." *Gross v. Victoria Station Farms, Inc.*, 578 N.W.2d 757, 761 (Minn.1998) (citation omitted).

■ To determine whether expert testimony would be helpful to a factfinder, it is necessary to identify the issues in dispute. *See Goeb v. Tharaldson*, 615 N.W.2d 800, 814 (Minn.2000); *State v. Myers*, 359 N.W.2d 604, 610 (Minn.1984). In a proceeding in which a person seeks to rescind the revocation of his or her license, the issues are finite in number and framed by statute.

The scope of the hearing is limited to the issues in clauses (1) to (10):

(1) Did the peace officer have probable cause to believe the person was driving, operating, or in physical control of a motor vehicle or commercial motor vehicle in violation of section 169A.20 (driving while impaired)?

(2) Was the person lawfully placed under arrest for violation of section 169A.20?

(3) Was the person involved in a motor vehicle accident or collision resulting in property damage, personal injury, or death?

(4) Did the person refuse to take a screening test provided for by section 169A.41 (preliminary screening test)?

(5) If the screening test was administered, did the test indicate an alcohol concentration of 0.08 or more?

(6) At the time of the request for the test, did the peace officer inform the person of the person's rights and the consequences of taking or refusing the test as required by section 169A.51, subdivision 2?

(7) Did the person refuse to permit the test?

(8) If a test was taken by a person driving, operating, or in physical control of a motor vehicle, did the test results indicate at the time of testing:

(i) an alcohol concentration of 0.08 or more; or

(ii) the presence of a controlled substance listed in schedule I or II or its metabolite, other than marijuana or tetrahydrocannabinols?

(9) If a test was taken by a person driving, operating, or in physical control of a commercial motor vehicle, did the test results indicate an alcohol concentration of 0.04 or more at the time of testing?

(10) Was the testing method used valid and reliable and were the test results accurately evaluated?

Minn.Stat. § 169A.53, subd. 3(b) (2006).

To establish that Burr's expert testimony would have been helpful to the factfinder, Hayes must, at a minimum, show that the testimony is relevant to at least one of the ten potential issues identified in section 169A.53, subdivision 3(b). *See Goeb*, 615 N.W.2d at 814. Hayes's proffered evidence is relevant only to clause (10), which asks, in part, whether "the testing method used" is "valid and reliable." Minn.Stat. § 169A.53, subd. 3(b)(10). The term "testing method" includes the subject regulated by an administrative rule entitled, "Methods of Analyzing Blood or Urine Samples," which provides that "[b]lood and urine samples must be tested for alcohol using only procedures approved and certified to be valid and reliable testing procedures by the director, Forensic Science Laboratory, Bureau of Criminal Apprehension, Minnesota Department of Public Safety," based on one of four specified scientific methods. Minn. R. 7502.0700 (2007). In addition,

the term "testing method," as used in section 169A.53, subdivision 3(b)(10), includes the manner in which a law-enforcement officer obtains a urine sample from a person suspected of DWI.

Even if proffered evidence has probative value, it still may be within a district court's discretion to exclude it. *Gross*, 578 N.W.2d at 761. In this case, the district court had a valid reason to exclude the proffered evidence: the evidence would have been insufficient to prove that the urine test is not "valid and reliable." Minn.Stat. § 169A.53, subd. 3(b)(10). In *Genung v. Commissioner of Pub. Safety*, 589 N.W.2d 311 (Minn.App.1999), *review denied* (Minn. May 18, 1999), this court rejected the urine-pooling theory when reviewing the merits of a district court's decision to uphold a license revocation. A forensic expert testified that the collection of the appellant's urine was not a "scientifically valid test method" because the suspect "had not been required to void his bladder once and wait approximately 20 to 30 minutes before producing the test sample." *Id.* at 313. We held that, despite the lack of a prior void, the urine test "was administered properly." *Id.* at 313. We also held that "[t]he officer who collected the sample abided by the applicable BCA procedures," which "have been found to ensure reliability" and "do not require voiding once before producing the test sample." *Id.* The *Genung* court essentially held that a urine test administered without a prior void is a valid and reliable testing method. *Id.* Thus, even if Hayes's proffered expert testimony is relevant, it is insufficient as a matter of law to prove that the "testing method" is not "valid and reliable." Minn.Stat. § 169A.53, subd. 3(b)(10).

Hayes contends that his expert's proffered testimony concerning urine pooling should have been admitted because it is relevant to the question whether he was impaired at the time he was driving. Hayes asserts that the time of driving should be the focus of the implied-consent hearing because the purpose of a chemical test is "to determine if the person *is* under the influence of alcohol." Minn.Stat. § 169A.51, subd. 2(1)(i) (2006) (emphasis added). By citing section 169A.51, subdivision 2(1)(i), and emphasizing the present tense of the word "is," Hayes contends that voiding his bladder before giving the urine sample was necessary to ensure that the urine test did not measure his alcohol concentration as it existed *before* he was driving or was arrested.

Hayes's contention is flawed because section 169A.51, subdivision 2(1)(i), is concerned only with the information that must be included in an implied-consent advisory. The commissioner's authority to revoke a person's driver's license, however, derives from a different statute:

> Upon certification by the peace officer that there existed probable cause to believe the person had been driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 (driving while impaired) and that the person submitted to a test and the test results indicate an alcohol concentration of 0.08 or more ..., then the commissioner shall revoke the person's license or permit to drive, or nonresident operating privilege.

Minn.Stat. § 169A.52, subd. 4(a) (2006). The statute authorizing the commissioner to revoke a driver's license does not consider specifically whether a person is impaired at the time of driving; rather, it considers whether there is probable cause to believe the person committed the offense of DWI, and whether "the test results indicate an alcohol concentration of 0.08 or more." *Id.* More importantly, the statute that defines the potential issues for

an implied-consent hearing asks, "If a test was taken by a person driving, operating, or in physical control of a motor vehicle, did the test results indicate at the time of testing ... an alcohol concentration of 0.08 or more." Minn.Stat. § 169A.53, subd. 3(b)(8)(i). Again, the statute authorizing rescission of revocation is focused on the results of a chemical test, not on the question whether a driver actually was impaired while driving.

In sum, the district court did not abuse its discretion by excluding the proffered expert evidence because the evidence would not have been helpful to the factfinder. *See Goeb*, 615 N.W.2d at 814; *Gross*, 578 N.W.2d at 760–61; *see also City of Springfield v. Anderson*, 411 N.W.2d 292, 294 (Minn.App.1987) (affirming exclusion of expert evidence concerning urine pooling in criminal prosecution).

## II.

■ Hayes also argues that the district court erred by concluding that the procedures used in connection with his urine test did not violate his right to equal protection under the Minnesota Constitution. The right to equal protection is embodied in a provision that states: "No member of this state shall be disenfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land." Minn. Const. art. I, § 2.

Hayes's second argument is, like his first, based on the theory of urine pooling. The specifics of his argument are unclear. The district court treated it as a general attack on the entire implied-consent statute. But Hayes does not challenge the statute's provision for choices among three different testing methods. We believe that Hayes's argument, properly restated, is an argument that he was treated differently from persons who take blood tests or breath tests because, as he asserts, blood tests and breath tests measure alcohol concentration at the time of giving a sample, not at some time in the past.

Hayes contends that "it is the choice of each law enforcement officer which test will be provided" and that this choice is arbitrary, depending only on "the fancy of the arresting officer or the local jurisdiction." He contends that the arbitrary nature of the determination whether a person's alcohol concentration is tested by blood, urine, or breath cannot pass the three-part rational basis test articulated in *Price v. Amdal*, 256 N.W.2d 461, 468 (Minn.1977). The *Price* test, however, is one that the supreme court has applied only to statutory classifications. *See, e.g., Olson v. Ford Motor Co.*, 558 N.W.2d 491, 497 (Minn.1997); *State v. Russell*, 477 N.W.2d 886, 887–88 (Minn.1991); *State v. Nordstrom*, 331 N.W.2d 901, 906 (Minn. 1983); *Wegan v. Village of Lexington*, 309 N.W.2d 273, 280 (Minn.1981); *Kossak v. Stalling*, 277 N.W.2d 30, 34 (Minn.1979). Because Hayes does not argue that the inequality of which he complains is inherent in the implied-consent statute, *Price* does not apply.

The commissioner contends that Hayes's argument fails because the unequal application of a statute is not a violation of the equal protection doctrine without proof of intentional or purposeful discrimination. The supreme court recently reiterated that proposition, stating that " 'unequal application' " of a statute " 'is not [a] denial of equal protection unless intentional or purposeful discrimination is shown.' " *Sheehan v. Franken (In re Contest of Gen. Election Held on Nov. 4, 2008)*, 767 N.W.2d 453, 464 (Minn.2009) (quoting *Draganosky v. Minnesota Bd. of Psychology*, 367 N.W.2d 521, 526 n. 4 (Minn.1985) (citing *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944))). The supreme court

further explained that "equal protection is not violated every time public officials apply facially neutral state laws differently." *Id.* at 463.

Hayes does not argue that the collection of his urine sample was the result of "intentional or purposeful discrimination," *id.*, nor did he offer any evidence to that effect. Rather, Hayes argues only that he is the victim of an arbitrary decision by the trooper to select a urine test. But it is not enough to prove that differential applications of a statute are arbitrary. *Id.* at 465 n. 14 (citing *Programmed Land, Inc. v. O'Connor,* 633 N.W.2d 517, 530 (Minn. 2001)). Thus, Hayes has not established that the administration of a urine test violated his constitutional right to equal protection.

## DECISION

The district court did not err by excluding Hayes's proffered expert testimony concerning the validity and reliability of his urine test. The district court did not err by ruling that the revocation of Hayes's driver's license was not a violation of Hayes's constitutional right to equal protection.

**Affirmed.**